**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION and the COMMONWEALTH OF MASSACHUSETTS *ex rel.* Maura Healey, Attorney General,<br><br>Plaintiffs,<br><br>v.<br><br>COMMONWEALTH EQUITY GROUP, LLC d/b/a KEY CREDIT REPAIR and NIKITAS TSOUKALIS<br><br>Defendants. | No. 20-cv-10991<br><br>Judge Rya W. Zobel<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' MOTION TO RECONSIDER OR,**
**IN THE ALTERNATIVE, TO CERTIFY ORDER FOR**
**INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

Defendants Commonwealth Equity Group, LLC d/b/a Key Credit Repair and Nikitas Tsoukalis (together, "Key Credit") respectfully move this Court to reconsider, pursuant to Federal Rule of Civil Procedure 54(b) and the Court's inherent authority, its August 10, 2021 Order (Dkt. 47) denying Key Credit's motion to dismiss the amended complaint of the Bureau of Consumer Financial Protection ("CFPB") and the Commonwealth of Massachusetts (together, "Plaintiffs"), or, in the alternative, to amend its Order to certify it for immediate appeal pursuant to 28 U.S.C. § 1292(b). In support of its motion, Key Credit states as follows:

## ARGUMENT

### I. KEY CREDIT RESPECTFULLY REQUESTS THAT THE COURT RECONSIDER ITS AUGUST 10, 2021 ORDER.

1. A district court may reconsider its previous decisions under Federal Rule of Civil Procedure 54(b) and "as justice requires" under the court's inherent authority. *Greene v. Union Mut. Life Ins. Co.*, 764 F. 2d 19, 22 (1st Cir. 1985) ("routine request for reconsideration of an

interlocutory district court decision" does "not necessarily fall within any specific federal rule," and "afford[ing] such relief from interlocutory judgments" is within the "inherent power of the rendering district court" as "justice requires"). A motion for reconsideration should be granted where the moving party demonstrates that the court's initial decision was based on a "manifest error of law," or where "the court has patently misunderstood a party." *Army v. Citimortgage*, Inc., 140 F. Supp. 3d 149, 150 (D. Mass. 2015). Key Credit respectfully submits that both of these factors weigh in favor of reconsideration here.

**A. The Court Applied the Incorrect Legal Standard in Assessing Whether the Payment Collection Restriction in CROA Has Superseded the Payment Collection Restriction in the TSR.**

2. As set forth in Key Credit's motion to dismiss and supporting memoranda, (*see* Mem. at 3-5; Reply at 1-3), the Telemarketing Sales Rule's ("TSR") payment collection restriction purports to prohibit credit repair organizations from requesting or collecting payment for their services until six months after their services were performed, *see* 16 C.F.R. § 310.4(a)(2), whereas, in the later-enacted Credit Repair Organizations Act ("CROA"), Congress determined that it is appropriate and permissible for credit repair organizations to collect payment for their services any time after the service is fully performed, *see* 15 U.S.C. § 1679b(b). Key Credit respectfully submits that the Court's conclusion that the payment collection restriction in CROA has not superseded the payment collection restriction in the TSR was based on a "manifest error of law." *See* Order at 3-4. Specifically, Key Credit respectfully submits that the Court's Order applied the incorrect legal standard.

3. Relying on the Supreme Court's decisions in *Radzanower v. Touche Ross& Co.*, 426 U.S. 148, 155 (1976), and *Morton v. Mancari*, 417 U.S. 535, 550-51 (1974), the Court concluded that, because it was not "impossible" to comply with both CROA and the TSR, they do

not conflict. *See* Order at 4 (citing *Radzanower* for the holding that "if two provisions 'are capable of co-existence, it is the duty of the courts to regard each as effective'"). But the "capable of co-existence" standard in *Radzanower* and *Morton* governs courts' review when *two federal statutes* potentially conflict with one another. *See Radzanower*, 426 U.S. at 155 (holding that "when two *statutes* are capable of co-existence, it is the duty of the courts to regard each as effective") (citing *Morton*, 417 U.S. at 550-51) (internal quotations omitted, emphasis added). Critically, the issue here is whether a federal *regulation* is inconsistent with a later-enacted federal *statute*, and a different standard applies. *See United States v. Kahn*, 5 F.4th 167, 174-75 (2d Cir. 2021) ("[e]ven a regulation that is not technically inconsistent with the statutory language is invalid when that regulation is fundamentally at odds with the manifest congressional design").

4. Even if it is possible to comply with a regulation and still remain in compliance with a subsequent statute, and even if the regulation is not "technically inconsistent" with the statute, a regulation is *still* deemed to be inconsistent with, and therefore superseded by, a later-enacted statute if conduct in compliance with the statute would violate the regulation. *See Norman v. United States*, 942 F.3d 1111, 1118 (Fed. Cir. 2019); *Farrell v. United States*, 313 F.3d 1214, 1219 (9th Cir. 2002); *United States v. Toth*, No. 15-CV-13367-ADB, 2020 WL 5549111, at **5-6 (D. Mass. Sept. 16, 2020); *Kahn*, 5 F.4th at 174-75.

5. For example, in *Norman*, a regulation provided that $100,000 was the maximum fine that the Secretary of the Treasury ("Secretary") could assess for violation of certain account disclosure requirements. *Norman*, 942 F. 3d at 1117. A later-enacted statute provided that the maximum fine was the greater of $100,000 or 50% of the balance in the account at the time of the violation. *Id*. When the Secretary levied an $800,000 fine against the taxpayer in *Norman*, the taxpayer argued that, notwithstanding that the assessment of the fine complied with the governing

statute, it violated the earlier regulation and was therefore unlawful. *Id*. Similarly, Plaintiffs here argue that, notwithstanding that Key Credit's payment collection practice is compliant with the governing statute (CROA), it violates an earlier regulation (the TSR) and is therefore unlawful.

6. In *Norman*, the court rejected the taxpayer's argument (and the argument made by Plaintiffs here) and concluded that the later-enacted statute, not the regulation, "controls." *Id*. at 1117-18. Critically, however, it was *not* "impossible" to comply with both the regulation and the statute. *See id*.; *but see* Order at 4. The Secretary could have assessed a fine that complied with both the regulation and the statute, just as a credit repair organization could adopt a payment collection practice that complies with both the TSR and CROA. Nevertheless, because some conduct (in *Norman*, assessing a fine greater than $100,000; here, collecting payment several days after the completion of services) complied with the statute at issue, but violated the regulation, the regulation was deemed to be inconsistent with, and therefore superseded by, the statute. *See id*.; *see also Farrell*, 313 F.3d at 1219 (same); *Toth*, 2020 WL 5549111, at **5-6 (same).

7. The analysis and result were the same in *Farrell*. *See Farrell*, 313 F. 3d at 1219. There, a regulation provided that the IRS could disallow an exclusion for income derived from certain possessions of the United States, such as the Virgin Islands, but, importantly, not Johnston Island. *See id*. at 1218-19. A later-enacted statute provided that the IRS could disallow an exclusion for income derived from Johnston Island as well. *Id*. When the IRS disallowed a taxpayer's exclusion of income earned in Johnston Island, the taxpayer argued that, notwithstanding that the disallowance complied with the governing statute, it violated the earlier regulation and was therefore unlawful. *Id*. Again, this argument – the same argument made by Plaintiffs here – was rejected. *See id*. And again, the regulation was deemed to be inconsistent with the statute notwithstanding that it was *not* impossible to comply with both – the IRS could disallow exclusions

for income derived from any number of locations in compliance with both the statute and the regulation. *See id*. Instead, because some conduct (disallowing an exclusion for income earned in Johnston Island) complied with the statute at issue but violated the regulation, the regulation was deemed to be inconsistent with, and therefore superseded by, the statute. *See id*.[1]

8. Accordingly, Key Credit respectfully submits that the Court erred in relying on *Radzanower* and *Morton* for the applicable legal standard, and that it erred in concluding that in *Norman*, *Farrell*, and *Toth*, "it was impossible to comply with both the statute and the regulation." *See* Order at 4. For all of the foregoing reasons, Key Credit respectfully requests that the Court reconsider its August 10, 2021 Order, hold that the payment collection restriction in CROA, 15 U.S.C. § 1679b(b), has superseded the payment collection restriction in the TSR, 16 C.F.R. § 310.4(a)(2), and dismiss Plaintiffs' TSR claims concerning Key Credit's payment collection practices.

**B. The Court Misapprehended the Speech at Issue in Assessing Whether the TSR's Payment Collection Restriction Is a Restriction on Speech.**

9. Next, Key Credit respectfully submits that the Court's conclusion that the TSR's payment collection restriction is "a restriction on conduct – the timing of payment – not on speech"

---

[1] Although the Court accurately quotes *Tennessee v. Lexington Law Firms*, No. 3:96-0344, 1997 WL 367409, at *6 (M.D. Tenn. May 14, 1997), *Lexington* did not concern the TSR's payment collection restriction, which is the provision at issue here. And while the court in *CFPB v. Prime Mktg. Holdings, LLC*, No. 16-cv-7111, 2016 WL 10516097, at *9 (C.D. Cal. Nov. 15, 2016), concluded that CROA and the TSR do not conflict, it did so without applying the legal standard set forth above and on the theory that, while CROA applies to all credit repair organizations, the TSR applies only to those credit repair organizations that engage in telemarketing. *Id*. That distinction might appear to be satisfying on its face, but it is the CFPB's position (and this Court has now held) that any credit repair organization that engages in advertising of any kind and receives telephone calls is a telemarketer for purposes of the TSR. Thus, virtually every credit repair organization in the country is likely a "telemarketer" under this extraordinarily broad interpretation of the TSR, and *Prime Mktg. Holdings*' distinction that the TSR applies to only a limited subset of credit repair organizations that are telemarketers is illusory.

was based on a "manifest error of law" and the Court having "patently misunderstood" Key Credit's position regarding the speech at issue here. *See* Order at 6-7.

10. Citing *Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 62 (2006), and *Wine & Spirits Retailers, Inc. v. Rhode Island*, 481 F.3d 1, 6 (1st Cir. 2007), the Court's Order states that "[e]ven if, as defendants would have it, speech in support of sales of their services necessarily leads to payment, 'it has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.'" Order at 6. Key Credit has no quarrel with the principle that a restriction on conduct is not rendered an unlawful restriction on speech merely because the conduct at issue – here, Key Credit's payment collection practice – is in part initiated, evidenced, or carried out by speech. As the court noted in *Wine & Spirits*, such a restriction on speech is "purely incidental to the regulation of conduct" and does not violate the First Amendment. *Wine & Spirits*, 481 F. 3d at 7 (citing *Rumsfeld*, 547 U.S. at 47). But speech that initiates, evidences, or carries out Key Credit's payment collection practice – for example, invoices, contracts, and communications concerning payment collection – is, emphatically, not the speech at issue here.[2]

11. Rather, the speech at issue here is the counsel and advice that Key Credit provides to its clients concerning best practices for obtaining and maintaining a good credit rating, and the

[2] To be clear, Key Credit *does* engage in the type of speech at issue in *Rumsfeld* and *Wine & Spirits*. But that is not the speech that is *unconstitutionally* restricted by the TSR, and it is not the subject of Key Credit's motion. Like communications proposing joint advertising plans in *Wine & Spirits*, *see* 481 F.3d at 7, verbal communications concerning payment collection, and Key Credit's written invoices and contracts are all examples of speech that "initiate[s], evidence[s], or carrie[s] out" the conduct regulated by the restriction at issue. But as *Rumsfeld* and *Wine & Spirits* make clear, the restriction on *that* speech is "purely incidental to the regulation of conduct" and therefore does not run afoul of the First Amendment. *See Wine & Spirits*, 481 F.3d at 7. Key Credit does not disagree with any of this, except to say that it is irrelevant to the matter before the Court.

TSR's content-based restriction targeting speech on that subject-matter only. (*See* Reply at 7.) Key Credit is in the business of, among other things, providing such counsel and advice in return for compensation. (*Id.* at 4-5, 7.) And it is well-settled that such counsel and advice is fully protected speech under the First Amendment. *See King v. Governor of the State of New Jersey*, 767 F.3d 216, 225-26 (3d Cir. 2014) (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 27-28 (2010)) ("*Humanitarian Law Project* makes clear that verbal or written communications, even those that function as vehicles for delivering professional services, are 'speech' for purposes of the First Amendment"); *see also* Reply at 4-5, 7.

12. Moreover, just as an outright ban on speech concerning the subject of maintaining one's credit rating would self-evidently be a restriction on speech under the First Amendment, it is well-settled that a restriction on a speaker's ability to obtain compensation for that speech is *also* a restriction on speech under the First Amendment. And this is so notwithstanding that the restriction is, *on its face*, a restriction "on conduct – the timing [or other conditions] of payment – not speech." *See* Order at 6; *but see Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.*, 502 U.S. 105, 116-18 (1991) (statute imposing constraint on income derived from speech based on its content was an unconstitutional restriction on speech); *Billups v. City of Charleston, South Carolina*, 961 F.3d 673, 682-84 (4th Cir. 2020) (ordinance imposing constraint on tour guides' ability to charge for their services was an unconstitutional restriction on speech); *Stavrianoudakis v. U.S. Dept. of Fish & Wildlife*, 435 F. Supp. 1063, 1094 (E.D. Cal. 2020) (statute "limit[ing] the fee that falconers can charge when giving a conservation education program" was a content-based restriction on speech because it "impose[d] a financial burden on falconers depending on the content of their presentation"); *In re Opinion of the Justices to the Senate*, 436 Mass. 1201, 1205-06, 1210 (2002) (statute imposing constraint on income derived from speech

based on its content was an unconstitutional restriction on speech); *Nefedro v. Montgomery Cty.*, 414 Md. 585, 595-98 (2010) (ordinance constraining fortunetellers' ability to charge for their services was an unconstitutional restriction on speech); *see also U.S. v. National Treasury Employees Union*, 513 U.S. 454, 468 (1995) (statute constraining employees' ability to be compensated for certain speech "unquestionably imposes a significant burden on expressive activity").

13. And where, as here, that restriction on obtaining compensation is selectively applied based on the content of the speech – provide investment advice and the restriction does not apply, but provide credit rating advice and it does – then it is a content-based restriction on speech and subject to strict scrutiny. *See id*.

14. Accordingly, Key Credit respectfully submits that the Court misapprehended Key Credit's position when it decided the motion under the assumption that the speech at issue was speech that merely "initiated, evidenced, or carried out" Key Credit's payment collection practice. *See* Order at 6. And Key Credit respectfully submits that it was therefore a manifest error of law to analyze the TSR's payment collection restriction under *Rumsfeld* and *Wine & Spirits* rather than the *Simon & Schuster* line of precedents set forth above.

15. For all of the foregoing reasons, Key Credit respectfully requests that the Court reconsider its August 10, 2021 Order, hold that the TSR's payment collection restriction is a content-based restriction on speech, and apply strict scrutiny to assess its constitutionality under the First Amendment. (*See* Reply at 9-12.)

16. Relatedly, with respect to Key Credit's void for vagueness arguments, the Court's Order considered only Key Credit's "as-applied" challenge to the TSR, noting that "[a] party who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as

applied to the conduct of others." Order at 5 (citing *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 495 (1982)). While that may be true as a general proposition, it is well-settled that a litigant *can* bring a facial challenge on vagueness grounds when the law at issue restricts "constitutionally protected conduct" such as speech. *See Hoffman Estates*, 455 U.S. at 494; *City of Chicago v. Morales*, 527 U.S. 41, 72 (1999) ("[i]n an overbreadth case, a defendant whose conduct clearly falls within the law and may be constitutionally prohibited can nonetheless have the law declared facially invalid to protect the rights of others (whose protected speech might otherwise be chilled)") (Breyer, J., concurring in part and concurring the judgment).

17. Accordingly, Key Credit also respectfully requests that the Court, after reconsidering and holding that the TSR's payment collection restriction is a content-based restriction on speech, take up consideration of Key Credit's contention that, on its face, the TSR is void for vagueness. (*See* Mem. at 6-12.)

## II. IN THE ALTERNATIVE, KEY CREDIT RESPECTFULLY REQUESTS THAT THE COURT CERTIFY ITS AUGUST 10, 2021 ORDER FOR IMMEDIATE REVIEW.

18. In the alternative, Key Credit respectfully requests that the Court certify its Order for interlocutory appeal. An interlocutory appeal under Section 1292(b) is appropriate when: (1) the appeal presents a question of law; (2) that is controlling; (3) that is contestable; and (4) the resolution of which will expedite the resolution of the litigation. *See* 28 U.S.C. § 1292(b). The issues that are the subject of this motion satisfy these criteria, and, if the Court does not reconsider its Order as described above, Key Credit therefore respectfully submits that the Court should amend its Order to certify it for interlocutory review.

19. Key Credit asks the Court to certify the following questions to the First Circuit for interlocutory review under Section 1292(b):

i. Did the payment collection restriction in the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679b(b), supersede the payment collection restriction in the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.4(a)(2)?

ii. Is the payment collection restriction in the TSR, 16 C.F.R. § 310.4(a)(2), a content-based restriction on speech?

**A. The Appeal Presents Questions of Law.**

20. The issue to be decided in a Section 1292(b) appeal must present a "pure question of law" – that is, "something the court of appeals could decide quickly and cleanly without having to study the record." *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F. 3d 674, 677 (7th Cir. 2000); *see Meijer, Inc. v. Ranbaxy Inc.*, 245 F. Supp. 3d 312, 315 (D. Mass. 2017) (granting motion to certify for interlocutory appeal and citing *Ahrenholz* with approval). Here, the Court had no factual record when it issued its Order, and the First Circuit would not need one either. Question (i) requires only a facial review of the language of the statute and the regulation at issue and application of legal precedents concerning when and whether a subsequently enacted federal statute controls over a prior inconsistent federal regulation. Question (ii) similarly requires only a facial review of the regulation at issue and application of legal precedents concerning when and whether such a restriction constitutes a restriction on speech. These are "abstract issue(s) of law" that are "suitable for determination by an appellate court without a trial record." *Id*.

**B. The Questions of Law are Controlling.**

21. The questions of law on which Key Credit seeks certification are "controlling" because whether (i) CROA (and not the TSR) controls a credit repair organization's payment collection practice, and (ii) the TSR's payment collection restriction is a restriction on speech, will significantly affect the further course of litigation and will control the outcome of this case. *See Henderson v. Bank of New York Mellon Corporation*, No. 15-10599-PBS, 2016 WL 11003504, at *2 (D. Mass. Feb. 17, 2016) (a "controlling" question "commonly involve[s] the possibility of

avoiding trial proceedings, or at least curtailing and simplifying pretrial or trial," and "reversal need not result in the complete disposition of all claims so long as it significantly alters the scope of the case"); *see also Sokaogon Gaming Enter. Corp. v. Tushie-Montogomery Assocs., Inc.*, 86 F. 3d 656, 659 (7th Cir. 1996) (a question is "controlling" when it is "quite likely to affect the further course of the litigation, even if not certain to do so").

22. If the First Circuit were to follow the courts that have concluded that a federal statute controls over a prior inconsistent federal regulation under the circumstances here, Plaintiffs' TSR claim will be substantially mooted. If the First Circuit were to follow the courts (including the Supreme Court) that have concluded that a content-based law that restricts a speaker's ability to obtain compensation for his or her speech is a content-based restriction on speech, the TSR's payment collection restriction will be subject to strict scrutiny, likely fatal to its constitutionality.

**C. The Questions of Law are Contestable.**

23. The weight of authority supporting Key Credit's position as to both questions is substantial and demonstrates that the questions are open to serious debate. Question (i) concerns whether the TSR's payment collection restriction, which purports to prohibit credit repair service providers from requesting or collecting payment for their services until six months after their services were performed, *see* 16 C.F.R. § 310.4(a)(2), is inconsistent with, and therefore superseded by, CROA's later-enacted payment collection restriction, in which Congress determined that it is appropriate and permissible for credit repair organizations to collect payment for their services any time after the service is fully performed, *see* 15 U.S.C. § 1679b(b).

24. Numerous courts have held that subsequently enacted or amended statutes supersede prior inconsistent regulations. *See Norman*, 942 F.3d at 1118; *Farrell*, 313 F. 3d at 1219; *Toth*, , 2020 WL 5549111, at **5-6. As set forth above, in *none* of those cases was it

"impossible" to comply with both the statute and the regulation, and none of those courts held that it must be impossible to comply with both the statute and the regulation in order to hold that the statute superseded the regulation. *See id*. To the contrary, in each instance, action taken in compliance with the prior regulation *would* comply with the subsequent statute, but action taken in compliance with the statute would *not necessarily* comply with the regulation. *See id*. Each of these courts found that this was sufficient to deem the federal regulation "inconsistent" with the later-enacted federal statute and conclude that the federal statute therefore controls. *See id*.

25. Here, as in *Norman*, *Farrell*, and *Toth*, compliance with the regulation would result in compliance with the statute, but compliance with the statute does not necessarily result in compliance with the regulation. Again, under the statute here, a credit repair organization could lawfully receive payment any time after it fully performed a service, without having to wait for six months to get paid as required by the regulation. Indeed, a credit repair organization can comply in every respect with the payment collection practice that Congress has specifically approved for all credit repair organizations in CROA and still violate the TSR. Were the First Circuit to follow the precedents set forth above, it would conclude that the TSR's payment collection restriction is therefore inconsistent with CROA's as a matter of law, and CROA controls. *See also Kahn*, 5 F.4th at 174-75 ("[e]ven a regulation that is not technically inconsistent with the statutory language is invalid when the regulation is fundamentally at odds with the manifest congressional design") (citing *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 26 (1982)) (internal quotations omitted).

26. Question (ii) concerns whether the TSR's restriction on the timing of a credit repair organization's collection of payment is a restriction on speech or merely a restriction on conduct. Again, the weight of authority in support of Key Credit's position is substantial and demonstrates that the question is at least open to serious debate.

27. Numerous courts (including the Supreme Court) have concluded that a law that restricts a speaker's ability to obtain compensation for his or her speech is a restriction on speech for purposes of the First Amendment. (*See supra* at ¶ 12.) And where the restriction is selectively applied based on the content of the speaker's speech, it is a content-based restriction and subject to strict scrutiny. (*Id.*)

28. As set forth above, the speech at issue here is the counsel that Key Credit provides to its clients concerning best practices for obtaining and maintaining a good credit rating. Key Credit is in the business of, among other things, providing such counsel in return for compensation. Based on the content of Key Credit's speech, the TSR purports to severely restrict Key Credit's ability to obtain that compensation. Were the First Circuit to follow the precedents cited above, it would conclude that the TSR's payment collection restriction is therefore a content-based restriction on speech and subject to strict scrutiny.

29. Both legal questions presented, moreover, are extremely consequential. The TSR's scope purports to be limited to credit repair organizations that are "telemarketers," but as Plaintiffs would have it, any such limitation is illusory. Indeed, the CFPB has argued, and this Court has found, that a credit repair organization is a "telemarketer" for purposes of the TSR if it simply receives phone calls and advertises its services in any manner whatsoever. The implication of this construction of the TSR is stark – virtually every credit repair organization in the country is a telemarketer under the TSR and subject to its restrictions.

**D. Resolution of the Questions Will Expedite Resolution of the Litigation.**

30. The First Circuit's resolution of the questions presented will "materially advance the ultimate termination of the litigation." *See* 28 U.S.C. § 1292(b). Were an appeal successful as to Question (i), it would substantially moot Plaintiffs' TSR claim, and were an appeal successful

as to Question (ii), the TSR's payment collection restriction would be subject to strict scrutiny on remand. Finality as to these questions – one way or the other – would meaningfully resolve the dispute between the parties and likely clear the way for an efficient, cost-effective resolution of the litigation. Obtaining such finality now would spare the parties and the Court the substantial time and costs of protracted discovery, further motion practice, and, potentially, a trial on the merits.

WHEREFORE, for all of the foregoing reasons, Key Credit respectfully requests that the Court reconsider its August 10, 2021 Order as described above, or, in the alternative, amend its Order to certify it for immediate appeal as described above.

Dated: September 9, 2021

Respectfully submitted,

**COMMONWEALTH EQUITY GROUP, LLC d/b/a KEY CREDIT REPAIR and NIKITAS TSOUKALIS**

By: /s/ Timothy A. Hudson
One of Their Attorneys

By: /s/ David B. Mack
One of Their Attorneys

Timothy A. Hudson, *pro hac vice*
Jordan E. Wilkow, *pro hac vice*
Amie M. Bauer, *pro hac vice*
TABET DIVITO & ROTHSTEIN LLC
209 S. LaSalle St., 7th Floor
Chicago, IL 60604
Tel: (312) 762-9450
Fax: (312) 762-9451
thudson@tdrlawfirm.com
jwilkow@tdrlawfirm.com
abauer@tdrlawfirm.com

-and-

David B. Mack
O'Connor, Carnathan and Mack LLC
One Van de Graaff Dr., Suite 104
Burlington, MA 01803
Tel: (781) 359-9005
dmack@ocmlaw.net

**CERTIFICATE OF SERVICE**

I certify that on September 9, 2021, I caused the foregoing **DEFENDANTS' MOTION TO RECONSIDER OR, IN THE ALTERNATIVE, TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)** to be electronically filed using this Court's ECF system, serving all attorneys of record by operation of the Court's electronic filing system.

/s/ Timothy A. Hudson

**CERTIFICATION PURSUANT TO LOCAL RULE 7.1(a)(2)**

I, Timothy Hudson, hereby certify that counsel conferred and attempted in good faith to resolve or narrow the issues raised herein but were unable to reach an agreement.

/s/ Timothy A. Hudson