IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Bureau of Consumer Financial Protection and the Commonwealth of Massachusetts *ex rel.* Maura Healey, Attorney General,

Plaintiffs,

v.

Commonwealth Equity Group, LLC (d/b/a Key Credit Repair) and Nikitas Tsoukales (a/k/a Nikitas Tsoukalis),

Defendants.

Case No. 1:20-cv-10991-RWZ

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO RECONSIDER OR IN THE ALTERNATIVE TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................... ii

TABLE OF AUTHORITIES ..................................................... iii

INTRODUCTION ..................................................... 1

I. Key Credit Fails to Show that August 10 Order Merits Reconsideration ..................................................... 1

II. Key Credit's Request for Certification Fails to Meet the Statutory Standard ..................................................... 7

1. Controlling question of law. ..................................................... 8

2. Substantial ground for difference of opinion ..................................................... 9

3. Materially advance the ultimate termination of the litigation ..................................................... 11

CONCLUSION ..................................................... 12

# TABLE OF AUTHORITIES


Cases Page(s)

*Caraballo-Seda v. Mun. of Hormigueros*,
395 F.3d 7 (1st Cir. 2005) .......... 8

*CFPB v. Prime Mktg. Holdings, LLC*,
No. 16-cv-7111, 2016 WL 10516097 (C.D. Cal. Nov. 15, 2016) .......... 10

*Farrell v. United States*,
313 F.3d 1214 (9th Cir. 2002) .......... 3, 5, 10

*Fothergill v. United States*,
566 F.3d 248 (1st Cir. 2009) .......... 7

*FTC v. Wyndham Worldwide Corp.*,
10 F. Supp. 3d 602 (D.N.J. 2014) .......... 11

*In re Flor v. BOT Fin. Corp.*,
79 F.3d 281 (2d Cir. 1996) .......... 9

*In re Text Messaging Antitrust Litig.*,
630 F.3d 622 (7th Cir. 2010) .......... 8

*In re Watson*,
309 B.R. 652 (Bankr. App. 1st Cir. 2004) .......... 8, 9, 11

*Karter v. Pleasant View Gardens, Inc.*,
323 F. Supp. 3d 179 (D. Mass. 2018) .......... 2, 6

*McGillicuddy v. Clements*,
746 F.2d 76 (1st Cir. 1984) .......... 8

*Morton v. Mancari*,
417 U.S. 535 (1974) .......... 10

*Muniz v. Sabol*,
517 F.3d 29 (1st Cir. 2008) .......... 11

*Muniz v. Winn*,
462 F. Supp. 2d 175 (D. Mass. 2006) .......... 11

*Nat'l Metal Finishing Co. v. Barclaysamerican/Com.*,
899 F.2d 119 (1st Cir. 1990) .......... 2

*Norman v. United States*,
942 F.3d 1111 (Fed. Cir. 2019) .......... 3, 4, 5, 10

*Palandjian v. Pahlavi*,
782 F.2d 313 (1st Cir. 1986) .......... 8, 12

*Radzanower v. Touche Ross & Co.*,
426 U.S. 148 (1976) .......... 2, 10

*Ruiz Rivera v. Pfizer Pharm.*, LLC,
521 F.3d 76 (1st Cir. 2008) .......... 2

*Tennessee v. Lexington Law Firms*,
No. 96-cv-0344, 1997 WL 367409 (M.D. Tenn. May 14, 1997) .......... 10

*United States v. Allen*,
573 F.3d 42 (1st Cir. 2009) .................................................................... 2
*United States v. Kahn*,
5 F.4th 167 (2d Cir. 2021) ....................................................................... 3
*United States v. Toth*,
No. 15-cv-13367-ADB, 2020 WL 5549111 (D. Mass. Sept. 16, 2020) ..................... 3, 10
*United States. ex rel. Conrad v. Healthpoint, Ltd.*,
02-cv-11738-RWZ, 2012 WL 1004775 (D. Mass. Mar. 26, 2012) ............................ 7

Statutes

15 U.S.C. § 6102............................................................................................ 5
15 U.S.C. § 1679b(b) ....................................................................................... 5, 7
28 U.S.C. § 1292(b) ......................................................................................... 8
31 U.S.C. § 5321............................................................................................. 3, 4

Rules

L.R. 7.1(d).......................................................................................................1

Regulations

16 C.F.R. § 310.4(a)(2) .................................................................................. 4, 7

## Introduction

Defendants Commonwealth Equity Group, LLC d/b/a Key Credit Repair, and its president and sole owner, Nikitas Tsoukalis (hereinafter Key Credit) move the Court to reconsider its August 10, 2021 Memorandum & Order (Order) (Doc. 47). That Order denied Key Credit's Motion to Dismiss the Bureau's Amended Complaint (Doc. 29). In the alternative, Key Credit asks that the Court certify for interlocutory appeal two of the issues resolved in the Order. The Court should deny Key Credit's Motion because it fails to meet the standard for either reconsideration or certification.[1]

### I. Key Credit Fails to Show that the August 10 Order Merits Reconsideration.

Key Credit asks the Court to reconsider two holdings in its August 10 Order: 1) that the Credit Repair Organizations Act (CROA) did not impliedly repeal those provisions of the Telemarketing Sales Rule (TSR) that limit when a credit-repair organization may receive payment for the services that it provides, and 2) that the provisions of the TSR that regulate credit repair do not violate the First Amendment. This Court has cautioned that "'motions for reconsideration are appropriate only in a limited number of circumstances: if the moving party presents

[1] In the caption of its Motion, Key Credit states that it requests an oral argument. Defs.' Mot. Recons. at 1, Sept. 9, 2021, ECF No. 54 (Mot.). But it does not include any explanation for its request in the text of the Motion. *See* L.R. 7.1(d). In any event, the Bureau does not believe that oral argument is necessary because the issues are straightforward and because the parties already had an opportunity to present argument in connection with Key Credit's Motion to Dismiss. *See* Tr. of Mot. Hr'g held on Dec.1, 2020, ECF No. 42. However, the Bureau would be glad to present oral argument if the Court believes that it would assist with the resolution of Key Credit's Motion.

newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust.'"[2] A "court has substantial discretion to grant or deny a motion for reconsideration, but will not consider any argument already rejected, or any theory that could – and should – have been raised earlier."[3] Key Credit does not present any newly discovered evidence or argue that there has been any change in the law. And with respect to both holdings that it asks the Court to reverse, Key Credit completely fails to show that the Court committed any "manifest error of law," or reached a decision that was "clearly unjust." Instead, it repeats the arguments that the Court has already rejected.

1. As the Court correctly held, CROA does not impliedly repeal the TSR's credit-repair payment requirements.[4] The reason for this is that "compliance with the TSR's payment requirements would not cause defendants to violate the CROA."[5] Accordingly, "[t]he TSR and the CROA thus do not conflict."[6]

Key Credit argues, however, that the Court applied the wrong standard and that a different standard should apply when the question is whether a later-enacted *statute* repeals a *regulation*.[7] According to Key Credit, "a regulation is *still* deemed

---

[2] *Karter v. Pleasant View Gardens, Inc.*, 323 F. Supp. 3d 179, 181 (D. Mass. 2018) (quoting *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009)).
[3] *Id.* (citing *Ruiz Rivera v. Pfizer Pharm.*, LLC, 521 F.3d 76, 81 (1st Cir. 2008); *Nat'l Metal Finishing Co. v. Barclaysamerican/Com., Inc.*, 899 F.2d 119, 123 (1st Cir. 1990)).
[4] Mem. and Order at 3–4, Aug. 10, 2021, ECF No. 47. (Order).
[5] *Id.*
[6] *Id.* at 4 (citing *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155 (1976)).
[7] Mot. at 3.

to be inconsistent with, and therefore superseded by, a later-enacted statute if conduct in compliance with the statute would violate the regulation."[8] Key Credit cites three cases in support of its argument, all of which it also cited in its Reply in support of its Motion to Dismiss.[9] The Court already considered those cases and correctly observed that none of them is relevant because, unlike the situation in this case, "in each of those cases, it was impossible to comply with both the statute and regulation."[10]

The Court's analysis of those cases was correct. *Norman* (as well as *Toth* and *Kahn*), considered the statutory requirement that persons who have foreign bank accounts are required, each year, to disclose those accounts to the Treasury Department.[11] Under 31 U.S.C. § 5321, the Secretary of the Treasury can impose a civil money penalty on any person who fails to file the appropriate disclosures, and from 1986 to 2004, the statute capped the penalty for willful nondisclosure at $100,000 per account.[12] In 1987, the Treasury Department issued a regulation regarding those penalties that echoed the statutory provision – it limited the maximum penalty for willful nondisclosure to $100,000 per account.[13] In 2004,

---

[8] Mot. at 3 (emphasis in original).
[9] Those three cases are *Norman v. United States*, 942 F.3d 1111 (Fed. Cir. 2019); *Farrell v. United States*, 313 F.3d 1214 (9th Cir. 2002); *United States v. Toth*, No. 15-cv-13367-ADB, 2020 WL 5549111 (D. Mass. Sept. 16, 2020). Key Credit also cites *United States v. Kahn*, 5 F.4th 167 (2d Cir. 2021), which considered the same issue, and reached the same result, as *Norman* and *Toth*. *Kahn* had not been decided at the time Key Credit filed its Reply. *See* Defs'. Reply in Supp. Mot. Dismiss, at 2, Nov. 23, 2020, ECF. No. 40 (Reply).
[10] Order at 4 & n.2.
[11] 942 F.3d at 1114.
[12] *Id*.
[13] *Id*. at 1117.

Congress amended § 5321. As a result of that amendment, § 5321 now provides that, for willful violations, "the maximum penalty . . . *shall* be increased to the greater of" $100,000 or fifty percent of the balance in the account at the time of the violation.[14] However, the Treasury Department did not repeal, or amend, the regulation that it had issued in 1987, which was based on the earlier version of the statute.[15]

In 2007, Ms. Norman willfully failed to file the appropriate disclosures with respect to her off-shore account, and, based on the 2004 version of § 5321, she was assessed a penalty of $800,000, which was 50% of the balance of the account.[16] She argued that, based on the 1987 regulation, her penalty could not exceed $100,000.[17] The court rejected that argument and held that the 1987 regulation did not apply because the Treasury Department did not have the authority to set a penalty cap that differed from the one that Congress had mandated when it amended § 5321.[18]

The situation here is very different from *Norman* because the Bureau is not attempting to enforce a regulation that conflicts with the statute that authorized the regulation (or with any other statute, for that matter). The Bureau is seeking to enforce the TSR's payment provisions against Key Credit, provisions that prohibit a telemarketer of credit-repair services from requesting or receiving payment until at least six months after promised results have been achieved.[19] The TSR was

---

[14] *Id.* (emphasis added).
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.* at 1117–18.
[19] 16 C.F.R. § 310.4(a)(2).

promulgated pursuant to authority in the Telemarketing Act.[20] Key Credit does not argue that the TSR conflicts with the Telemarketing Act. Instead, Key Credit contends that the TSR conflicts with CROA. CROA provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."[21] As the Court recognized in its August 10 Order, implied repeal is not appropriate because it is possible to comply with both the TSR's payment provisions and CROA.[22] *Norman* might have been relevant if Congress had amended the Telemarketing Act (or CROA) to *mandate* that credit repair organizations such as Key Credit be permitted to receive payment for services as soon as those services had been provided. But neither the Telemarketing Act nor CROA includes such mandatory language. Accordingly, the cases cited by Key Credit are irrelevant.[23]

---

[20] 15 U.S.C. § 6102.
[21] 15 U.S.C. § 1679b(b).
[22] Order at 3–4.
[23] *Farrell v. United States*, *supra*, is the one case cited by Key Credit that does not involve the penalty for failing to disclose off-shore bank accounts. However, it is no more helpful to Key Credit than the other cited cases. Before 1986, a provision of the Internal Revenue Code specified that up to $70,000 of income earned in certain possessions of the United States was not subject to federal income tax. 313 F.3d at 1219. The Treasury Department promulgated a regulation specifying that this provision of the Code applied to income earned on, *inter alia*, Johnston Island. *Id.* In 1986, Congress amended the Code so that the exclusion only applied to income earned on Guam, American Samoa, and the Northern Mariana Islands. *Id.* However, the Treasury Department did not repeal the regulation. *Id.* Farrell argued that, based on the regulation, he should not be taxed on income he earned in 1994 through 1996 while working on Johnston Island. *Id.* at 1218. The court had no problem rejecting Farrell's argument because the regulation was "flatly contradicted" by the Code as amended. *Id.* at 1219. Again, *Farrell* would support Key Credit only if the TSR's

2. The Court correctly held that the TSR's payment requirements do not violate the First Amendment because they impose a restriction on conduct, not speech.[24] In its Motion, Key Credit repeats arguments that it made in its Reply in support of its Motion to Dismiss.[25] Indeed, in the First Amendment argument in its Motion, Key Credit does not cite any case that it had not cited in its Reply. As this Court has explained, a motion for reconsideration should not be based on an argument that the court has already rejected.[26]

In any event, there is no merit to Key Credit's First Amendment argument because it seeks First Amendment protection for conduct that is not challenged in the Amended Complaint. In its Motion, Key Credit claims that "the speech at issue here is the counsel and advice that Key Credit provides to its clients concerning best practices for obtaining and maintaining a good credit rating."[27] That is a misreading of the Amended Complaint. In fact, Count I of the Amended Complaint[28] alleges that Key Credit violated the TSR's payment provisions in connection with charges that it imposed for services that it provides, services that it claims will improve a consumer's credit rating, not in connection with counseling.[29] Accordingly, Key

---

credit repair provisions were "flatly contradicted" by CROA. As this Court held, there is no such contradiction. Order at 3–4.

[24] Order at 6.

[25] *Compare* Reply at 3–9 with Mot. at 5–8.

[26] *Karter*, 323 F. Supp. 3d at 181.

[27] Mot. at 6.

[28] Am. Compl. at 13–15, Sept. 16, 2020, ECF. No. 26.

[29] Indeed, Key Credit's advertising, which is copied in the Amended Complaint, shows that, far from promoting counseling, it touts services it will provide for its customers, and the extent to which those services will improve a consumer's credit rating. *See* Am. Compl. at 11, 12. As for counseling, the Amended Complaint alleges that Key Credit provides it for free. *See* Am. Compl. at 8 (Key

Credit's First Amendment argument is not based on the allegations in the Amended Complaint and is not properly raised in connection with its Motion to Dismiss.[30] Indeed, to the extent that the Amended Complaint even mentions counseling, it suggests that Key Credit provides that "consultation" for free.[31]

3. Key Credit devotes three sentences of its Motion to its request that the Court reconsider its conclusion that the TSR is not void for vagueness.[32] Key Credit presents no new argument in that paragraph. Accordingly, and for the reasons set forth in the Bureau's Opposition to Defendants' Motion to Dismiss (Doc. 34 at 9–11), the Court should reject Key Credit's request that it reconsider its holding regarding vagueness.

## II. Key Credit's Request for Certification Fails to Meet the Statutory Standard.

Key Credit asks the Court to certify for interlocutory appeal two issues that the Court resolved when it denied Key Credit's motion to dismiss:

> 1. Did the payment collection restriction in the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679b(b), supersede the payment collection restriction in the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.4(a)(2)?
>
> 2. Is the payment collection restriction in the TSR, 16 C.F.R. § 310.4(a)(2), a content-based restriction on speech?[33]

---

Credit's advertisements claim that it provides consumers with a "free consultation").

[30] *See U.S. ex rel. Conrad v. Healthpoint, Ltd.*, 02-cv-11738-RWZ, 2012 WL 1004775, at *2 (D. Mass. Mar. 26, 2012) (in resolving a motion to dismiss, "the 'court takes as true all well-pleaded facts in the complaint[ ], scrutinize[s] them in the light most hospitable to the plaintiffs' theory of liability, and draw[s] all reasonable inferences therefrom in the plaintiffs' favor.'" (quoting *Fothergill v. United States*, 566 F.3d 248, 251 (1st Cir. 2009)).

[31] Am. Compl. at 8.

[32] Mot. at 8–9.

[33] *Id.* at 10.

Key Credit must show that the issues as to which it seeks certification (1) involve a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) for which an immediate appeal from the order may materially advance the ultimate termination of the litigation.[34] "'[I]nterlocutory certification under 28 U.S.C. § 1292(b) should be used sparingly and only in exceptional circumstances.'"[35] Further, "[a]s a general rule, we do not grant interlocutory appeals from a denial of a motion to dismiss."[36] Not only does Key Credit seek certification of issues addressed in a denial of a motion to dismiss, it cannot meet any of the three criteria required by § 1292(b).

**1. Controlling question of law** – An issue raises a controlling question of law "where the . . . court's ruling presents a question of law that controls the outcome of the underlying case."[37] The two issues as to which Key Credit seeks certification are questions of law, but they are not controlling because even if the First Circuit were to reverse this Court's resolution of those issues, it would not determine the outcome of this case. There are nine counts in the Amended Complaint, but the two issues challenged by Key Credit relate only to Count I because that is the only count that challenges the manner in which Key Credit

---

[34] 28 U.S.C. § 1292(b).
[35] *Caraballo-Seda v. Mun. of Hormigueros*, 395 F.3d 7, 9 (1st Cir. 2005) (quoting *Palandjian v. Pahlavi*, 782 F.2d 313, 314 (1st Cir. 1986)).
[36] *Carballo-Seda*, 395 F.3d at 9 (citing *McGillicuddy v. Clements*, 746 F.2d 76, 76 n.1 (1st Cir. 1984)).
[37] *In re Watson*, 309 B.R. 652, 659 (Bankr. App. 1st Cir. 2004), aff'd, 403 F.3d 1 (1st Cir. 2005); *see In re Text Messaging Antitrust Litig.,* 630 F.3d 622, 624 (7th Cir. 2010).

charges for its services. Thus, even if Key Credit were to succeed on interlocutory appeal with respect to those two issues, it would still face liability with respect to the remaining eight counts.

Key Credit contends that if it were to prevail before the First Circuit, "Plaintiffs' TSR claim will be substantially mooted."[38] But Key Credit fails to note that Count II of the Amended Complaint also alleges a violation of the TSR – it alleges that Key Credit violated the TSR by misrepresenting the efficacy of the services it offered. An interlocutory appeal would have no impact on that count, or on Counts III-IX. Accordingly, the two issues raised by Key Credit are hardly controlling.

**2. Substantial ground for difference of opinion** – Substantial grounds for difference of opinion exist where the proposed interlocutory appeal presents one or more difficult and pivotal questions of law not settled by controlling authority.[39]

Key Credit fails to show that there is a substantial ground for difference of opinion as to this Court's resolution of either of the issues it challenges. Indeed, it merely contends that the issues are "contestable," which is not the standard set forth in § 1292(b).[40] In any event, with respect to the first issue – whether CROA impliedly repeals the TSR's payment provisions – there is no substantial ground for

[38] Mot. at 11.
[39] *In re Watson*, 309 B.R. at 660; *see In re Flor v. BOT Fin. Corp.*, 79 F.3d 281, 284 (2d Cir. 1996) ("the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." Rather, the court must "analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a substantial ground for dispute.")
[40] *See* Mot. at 11–13.

difference of opinion. This Court's conclusion that there was no implied repeal is consistent with the two other decisions that have addressed the issue.[41] This Court relied on the well-established principle that there is no implied repeal where two provisions are capable of coexistence.[42] And as this Court recognized, the TSR's payment provisions and CROA are capable of coexistence.[43] Key Credit merely relies once again on *Norman v. United States*, *supra*, *Farrell v. United States*, *supra*, and *United States v. Toth*, *supra*.[44] As this Court recognized,[45] and as explained above, those cases are irrelevant to this issue.

Key Credit fares no better with respect to its second issue.[46] Again, Key Credit contends that the First Amendment would be violated if there were limits imposed on its ability to charge for "counsel[ing] . . . its clients concerning best practices for obtaining and maintaining a good credit rating." But as explained above, this argument is a strawman because that is not what is challenged in the Amended Complaint. Instead, the Amended Complaint alleges that Key Credit violated the TSR's payment provisions when it requested or received payment for goods or services represented to remove derogatory information from, or improve, a

---

[41] *See* Order at 3, 4 (citing *Tennessee v. Lexington Law Firms*, No. 96-cv-0344, 1997 WL 367409, at *6 (M.D. Tenn. May 14, 1997), and *CFPB v. Prime Mktg. Holdings*, LLC, No. 16-cv-7111, 2016 WL 10516097, at *9 (C.D. Cal. Nov. 15, 2016)).

[42] Order at 4 (citing *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155 (1976), and *Morton v. Mancari*, 417 U.S. 535, 550-51 (1974)).

[43] *Id.* at 4.

[44] *See* Mot. at 12.

[45] Order at 4 n.2.

[46] *Id.* at 12–13.

person's credit history, credit record, or credit rating.[47] The Bureau has not challenged the manner in which Key Credit charges consumers for counseling. Accordingly, Key Credit has failed to show that this Court's resolution of either of the issues it challenges involves a substantial ground for difference of opinion.

**3. Materially advance the ultimate termination of the litigation** – "An interlocutory appeal materially advances the ultimate termination of the litigation where resolution of the issue on appeal 'greatly assists' in resolving the underlying matter, and does not unnecessarily delay resolution of the underlying matter."[48] "This 'ultimate termination' requirement is designed to operate as a floodgate against extensive interlocutory appeals."[49]

Certification of the issues raised by Key Credit would in no way materially advance the ultimate termination of the litigation. As explained, those issues are relevant only to the first count of the nine-count Amended Complaint. Key Credit contends that, if it were to prevail in an interlocutory appeal, "it would substantially moot Plaintiffs' TSR claim." That is wrong because, as explained above, the Amended Complaint contains two counts alleging violations of the TSR. Count II of the Amended Complaint alleges that Key Credit violated the TSR by

---

[47] Am. Compl. at 13–15.

[48] *In re Watson*, 309 B.R. at 660 (B.A.P. 1st Cir. 2004); *see FTC v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 635 (D.N.J. 2014), *aff'd*, 799 F.3d 236 (3d Cir. 2015) (noting that certification "materially advances the ultimate termination of the litigation where the interlocutory appeal eliminates: (1) the need for trial; (2) complex issues that would complicate trial; or (3) issues that would make discovery more costly or burdensome.").

[49] *Muniz v. Winn*, 462 F. Supp. 2d 175, 185 (D. Mass. 2006), rev'd on other grounds *sub nom. Muniz v. Sabol*, 517 F.3d 29 (1st Cir. 2008).

misrepresenting the nature of the services it sells. Were Key Credit to prevail in its interlocutory appeal, the appeal would have no impact on Count II. It would not obviate discovery or the need for a trial. Nor would it render that trial less complex because resolution of Count I, which would merely require this Court to determine when Key Credit requested and received payment for the services it sold, is not particularly difficult. Accordingly, an interlocutory appeal would do nothing to advance the termination of the litigation in this case.[50]

* * * * *

Key Credit has failed to demonstrate that its request satisfies even one, let alone all three, of the criteria for an interlocutory appeal. This Court should therefore deny that request.

## Conclusion

For the foregoing reasons, the Court should deny Key Credit's Motion. Key Credit fails to show that the August 10 Order merits reconsideration, and Key Credit fails to meet the statutory standard for certification of issues for interlocutory appeal.

[50] Key Credit suggests that if this Court were to certify the two issues it presents, and if the First Circuit were to grant permission for the interlocutory appeal, and if that court were to resolve those issues, then it might "clear the way for an efficient, cost-effective resolution of the litigation." Mot. at 14. Key Credit does not explain what it means by "an efficient, cost-effective resolution of the litigation." Because the interlocutory appeal Key Credit seeks relates to only one count of the Amended Complaint, such an appeal would have little impact on discovery or on the subsequent trial. *See Palandjian v. Pahlavi*, 782 F.2d at 314 (1st Cir. 1986) (even if an interlocutory appeal would save appreciable trial time, that does not entitle a party to an interlocutory appeal, "for such would often be true of interlocutory appeals.").

Respectfully submitted,

s/ Nelle Rohlich

Nelle Rohlich
Benjamin Konop
(202) 435-7280
(202) 435-7265
Nelle.Rohlich@cfpb.gov
Benjamin.Konop@cfpb.gov
Bureau of Consumer Financial Protection
1700 G Street, N.W.
Washington, D.C. 20552
*Attorneys for Plaintiff*
*Bureau ofConsumer Financial Protection*