UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Bureau of Consumer Financial
Protection and the Commonwealth of
Massachusetts *ex rel.* Maura Healey,
Attorney General,

      Plaintiffs,

      v.

Commonwealth Equity Group, LLC
(d/b/a Key Credit Repair) and Nikitas
Tsoukales (a/k/a Nikitas Tsoukalis),

      Defendants.

Case No. 1:20-cv-10991-RWZ

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR
PROTECTIVE ORDER DISALLOWING
30(b)(6) DEPOSITION**

Plaintiffs Bureau of Consumer Financial Protection (Bureau) and

Commonwealth of Massachusetts (Commonwealth) ask the Court to issue a protective

order under Rule 26(c) to prohibit Defendants from taking Rule 30(b)(6) depositions

that Defendants served on Plaintiffs on September 22, 2022.[1] A protective order should

be entered because the depositions noticed: (1) are untimely, unduly burdensome,

harassing, and would be unduly prejudicial to Plaintiffs; (2) include improper topics

designed to intrude upon the work product of Plaintiffs' attorneys; and (3) are

duplicative of information already provided by Plaintiffs to Defendants.

## BACKGROUND

For more than a decade, Defendants Commonwealth Equity Group (Key Credit)

and Nikitas Tsoukales have targeted financially-distressed consumers nationwide,

---

[1] Defs' Notice of Rule 30(b)(6) Dep. to Dep. to Pl. Bureau of Consumer Financial
Protection (Ex. A) and Key Credit's 30(b)(6) Notice to MA AG (Ex. B)

selling credit-repair services through false promises that Key Credit would improve consumers' credit scores and remove negative information from consumers' credit reports. Plaintiffs' Amended Complaint seeks to stop Defendants' illegal conduct, obtain redress for the consumers that Defendants harmed, and penalize Defendants for their violations of law. Throughout this litigation, Plaintiffs have endeavored to work with Defendants to complete the discovery process under the Federal Rules of Civil Procedure. But Defendants have been consistently noncompliant, continually refusing to produce documents, responsive information, and appearing for depositions, eventually leaving the Court little choice but to extend discovery.

Defendants served Plaintiffs with Notice of 30(b)(6) Depositions ("Deposition Notices" or "Notices")[2] despite the fact that the period to issue new discovery closed in June. Combined, the two Deposition Notices identify five topics and request that Plaintiffs designate knowledgeable witnesses to testify. All five topics in the Notices improperly seek "the bases for" allegations set forth in Plaintiffs' Amended Complaint.[3]

## **ARGUMENT**

A protective order under Rule 26 is appropriate where good cause exists and an order is necessary to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[4] Rule 26 "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of

---

[2] Exs. A and B

[3] *Id.* at 2.

[4] Fed. R. Civ. P. 26(c)(1); *see e.g. EEOC v. Texas Roadhouse, Inc.*, No. 11-11732-DJC, 2014 WL 4471521, at *3 (D. Mass. Sept. 9, 2014) (court disallowed a proposed 30(b)(6) deposition of the EEOC that was overly broad, unduly burdensome, and that sought to discover information about the EEOC's opinions, analysis, and deliberative process).

protection is required."[5] Under Rule 26(c) "a showing of good cause is required to justify any protective order. . .and [t]he party seeking a protective order has the burden of demonstrating good cause." [6]  Plaintiffs readily meet this burden here.

## I.     Defendants' Deposition Notices are Untimely, Unduly Burdensome, Harassing, and Oppressive

Defendants had over a year to schedule depositions of Plaintiffs and did not. Discovery closed on June 30, 3022.  As set forth in Plaintiffs' Opposition Brief to Defendants' Motion to Compel, any further discovery beyond that date is untimely.[7] Further, Defendants told the Court during the July 13, 2022, scheduling conference that they were not seeking additional discovery as part of the parties' request to extend the fact discovery deadline.[8]  Plaintiffs reasonably relied on the fact that Defendants did not notice depositions during the discovery period and similarly represented to the Court that it was not seeking additional discovery. In reliance on Defendants' conduct and representations to the Court, Plaintiffs did not incorporate in their planning for the remaining days of the authorized discovery period that they would have to respond to another aberrant, untimely discovery demand, much less identify and prepare 30(b)(6) designees.

Plaintiffs are unduly burdened by having to respond to Defendants' untimely discovery efforts. The burden and associated prejudice are exacerbated by the fact that Defendants waited until September 2, 2022 to begin producing documents pursuant to

---

[5] *SEC v. Lemelson*, 334 F.R.D. 359, 361 (D. Mass. 2020)
[6] *Steward Health Care Sys. LLC v. Southcoast Health Sys., Inc.*, No. 15-14188-MLW, 2016 WL 11004353, at *1 (D. Mass. June 15, 2016).
[7] Pls' Opp'n to Key Credit's Mot. to Compel Disc. Resps., ECF No. 81. Plaintiffs incorporate by reference the entire brief into this motion.
[8] *See* Pls' Letter to Defs, July 15, 2022 (Ex. C).

the Court's July 25, 2022 grant of Plaintiffs' Motion to Compel. Defendants *still* have not completed their production (despite Plaintiffs repeatedly requesting they do so 45 days prior to Plaintiffs' depositions of Defendants scheduled for October 18, 2022.).[9]  In the meantime, Plaintiffs are reviewing and assessing the productions, trying to identify documents for expert witnesses and preparing for the upcoming depositions. Defendants' course of dealing throughout this litigation, combined with the timing of the Deposition Notices, suggests that Defendants are attempting to harass and oppress Plaintiffs as they try to complete discovery in less than one month. Plaintiffs seek a protective order against Defendants' machinations and ask the Court to deny Defendants' request to conduct the Noticed 30(b)(6) depositions.

## II.    Defendants' Deposition Topics Are Improper for a Rule 30(b)(6) Deposition and Seek Legal Opinions and Attorney Work Product

It is well-settled law that a party may not use a Rule 30(b)(6) deposition to inquire about the evidentiary basis for its opponent's position.[10] " While asking a 30(b)(6) witness about facts is entirely appropriate, the lay witness should not be expected to testify as to how any such facts form the basis of a legal [claim or] affirmative defense.  [D]epositions, including 30(b)(6) depositions, are designed to discover facts … not legal theories."[11] Inquiries about the "bases" for a parties' claims

---

[9] Pls' Letter to Defs, Aug. 18, 2022 (Ex. D). Pls' Letter to Defs, Aug. 19, 2022 (Ex. E)
[10] *See e.g. Cooper v. Charter Commc'ns, Inc.*, No. 3:12-cv-10530-MGM, 2016 WL 128099, *2 (D. Mass. Jan. 12, 2016) ("While asking a 30(b)(6) witness about facts is entirely appropriate, the lay witness should not be expected to testify as to how any such facts form the basis of a legal [claim or] affirmative defense.  [D]epositions, including 30(b)(6) depositions, are designed to discover facts … not legal theories.") (quoting *Neponset Landing Corp. v. Northwestern Mut. Life Ins. Co.*, 279 F.R.D. 59, 61 (D. Mass. 2011)).
[11] *SEC v. Present* , No. 14-14692-LTS, 2016 WL 10998439, at *3 (D. Mass. May 12, 2016); *Cooper*, 2016 WL 128099, at *2 ("While asking a 30(b)(6) witness about facts is entirely appropriate, the lay witness should not be expected to testify as to how any such

necessarily invoke attorney work product. Here, the only witnesses Plaintiffs can designate to testify with knowledgeable about Defendants' Deposition Topics related to the bases for their claims are the Plaintiffs' counsel of record, or non-attorneys working at the direction of Plaintiffs' counsel of record. Depositions of opposing counsel "are generally disfavored . . .and engender disruptions, delays, and added costs."[12] This is especially true where – as here – there are other methods to obtain the discovery.

In *SEC v. Present*, the court granted a protective order with regard to 30(b)(6) deposition topics calling for the factual bases for certain allegations made by the SEC. The court observed that topics relating to the bases for allegations made by the SEC are inappropriate as Rule 30(b)(6) deposition topics because they "amount to an inquiry by the defense into the reasons why certain allegations were made by the SEC" and "inherently would require questioning into how the SEC conducted its investigation and why it made certain allegations regarding the defendant. . .[s]uch questioning inappropriately veers into the territory of legal opinion and attorney work product."[13]

All five topics in Defendants' Deposition Notices to Plaintiffs concern "the bases

---

facts form the basis of a legal affirmative defense. [D]epositions, including 30(b)(6) depositions, are designed to discover facts … not legal theories[.]") (citing *Neponset Landing Corp.*, 279 F.R.D. at 61 and Fid. Mgmt. & Rsch. Co. v. Actuate Corp., 275 F.R.D. 63 (D. Mass. 2011)).

[12] *Kaiser v. Kirchick*, No. 21-10590-MBB, 2022 WL 1104585, at *2 (D. Mass. Apr. 12, 2022) (citations omitted). See also *RP Mach. Enter., Inc. v. UPS Cap. Bus. Credit*, No. 05-CV-40200-FDS, 2006 WL 8458644, at *3–5 (D. Mass. Nov. 1, 2006) ("[w]hile the Federal Rules do not explicitly prohibit the deposition of an opposing party's attorney, courts do not look favorably upon such attempts. . . [t]aking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. . . [i]t is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony.")

[13] *SEC v. Present*, 2016 WL 10998439, at *3.

for" Plaintiffs' claims in the Amended Complaint.[14] On these grounds alone, the Court should preclude Defendants from conducting the 30(b)(6) depositions.

Further, the Noticed 30(b)(6) Depositions are not the appropriate method for attaining the information sought by Defendants. "[A] party may properly resist a Rule 30(b)(6) deposition on the grounds that the information sought is more appropriately discoverable through other discovery devices."[15] In *Fidelity Management. & Research Co. v. Actuate Corp.*, the Court held that 30(b)(6) testimony was inappropriate where it would impinge on the work-product of counsel. The Court ruled that contention interrogatories – not a 30(b)(6) deposition – were the appropriate means for the discovery sought.[16] As the magistrate explained:

> [I]t is not clear that a 30(b)(6) deposition is the best method for obtaining the information. Rather, it can be argued that contention interrogatories are a better vehicle. The reason is simple—complaints and answers, including affirmative defenses, are drafted by attorneys, and asking a 30(b)(6) witness, usually a non-lawyer, to answer this type of questions after being prepared in the manner of 30(b)(6) witnesses makes it extremely difficult to distinguish between "facts" (not protected) and the issue of why those facts have legal consequences, which usually has a work-product (lawyer's mental impressions) dimension. This problem is more acute since it is most likely that the lawyer was the source of the information which was provided to the 30(b)(6) witness so that he could answer the questions on behalf of the corporation and bind the corporation to those answers. And drawing the line between questions which seek to elicit facts and questions which will lead to a revelation of work-product matters can be difficult.[17]

Defendants' deposition topics will inevitably "stray into the forbidden territory of [Plaintiffs'] mental impressions."[18] As discussed below, Defendants *already* have the information they seek through interrogatories Defendants served on Plaintiffs. The

---

[14] *See supra* p. 2.
[15] *SEC v. Present*, 2016 WL 10998439, at *2 (citation omitted).
[16] *Fid. Mgmt. & Rsch Co.*, 275 F.R.D. at 64.
[17] *Id.*
[18] *Cooper*, 2016 WL 128099, at *2.

Court should protect Plaintiffs from inherent dangers of the proposed depositions and deny Defendants' 30(b)(6) requests.

### III.   Plaintiffs Already Produced the Discovery Sought by Defendants

Finally, Plaintiffs have already provided the factual information sought in Defendants' deposition topics in a way that will not impede on Plaintiffs' work-product protections. As noted, courts analyzing the discovery obligations of government agencies pursuing claims under a statutory mandate have granted protective orders limiting Rule 30(b)(6) depositions "when other methods of discovery are available, the deposition amounts to questioning of opposing counsel, and where the deposition is likely to invade attorney work product or to place an undue burden on the parties."[19] Here, all of deposition topics noticed by Defendants were previously served on Plaintiffs as interrogatories. And the Plaintiffs have responded to those interrogatories in full.

Defendants' Deposition Topic 1 to the Bureau seeks:

> Each and every specific advertisement, representation, telemarketing statement, or other statement made by Key Credit to actual or prospective consumers that the Bureau alleges reflects a "Promised Result" (as that term is used in 16 C.F.R. § 310.4(a)(2)(ii)) and upon which the Bureau *bases its claims* in this lawsuit.[20]

This topic is substantively identical to Defendants' Interrogatory 2, which asked Plaintiffs to:

> Identify each particular advertisement, representation, telemarketing statement, or other statement made by Key Credit that you contend makes a "Promised Result" to actual or prospective consumers, and identify specifically each such

---

[19] *SEC v. Present*, 2016 WL 10998439, at *2, citing *EEOC v. Texas Roadhouse, Inc.*, 2014 WL 4471521, at *3; *SEC v. Buntrock*, No. 02-2180, 2004 WL 1470278, at *2 (N.D. Ill. June 29, 2004); *SEC v. Rosenfeld*, No. 97-1467-RPP, 1997 WL 576021, at *4 (S.D.N.Y. Sept. 16, 1997).
[20] Ex. A (emphasis added)

"Promised Result."[21]

Plaintiffs answered Interrogatory 2 in full on March 16, 2022, by identifying and producing website pages in Plaintiffs' possession with Defendants' advertising representations, as well as around 100 consumer complaints that describe the misrepresentations made by Defendants.[22] Plaintiffs also explained that any advertisement, representation, telemarketing statement, or other statement describing Key Credit's services as "credit repair" or representing that "Key Credit's services removes derogatory or negative information from, or improves, a consumer's credit history, credit record, or credit rating" constitute a promised result.[23]

Similarly, Defendants' Deposition Topic 2 to the Bureau and Deposition Topic 1 to the Commonwealth are identical in substance and nearly identical in wording to Defendants' Interrogatory 12. Topic 2 seeks:

> Each and every specific advertisement, representation, or statement made by Key Credit to actual or prospective consumers that [the Bureau/MAAG] alleges were false, misleading, or deceptive and upon which [the Bureau/MAAG] *bases its claims* in this lawsuit, including but not limited to why [the Bureau/MAAG] contends that each such representation or statement is false, misleading, or deceptive.[24]

And Defendants' Interrogatory 12 asked Plaintiffs to:

> Identify and produce a complete copy of each advertisement, representation, or statement made by Key Credit to a consumer that you allege was false, misleading, or deceptive. Your response should also specify each such false, misleading or deceptive representation or statement, and explain why each such representation or statement is false, misleading or deceptive.[25]

---

[21] *See* Pls' Resps. to Defs' First Set of Interrogs. at 2. (Ex. F)
[22] *Id*. at 2-3.
[23] *Id*.
[24] Exs. A and B (emphasis added).
[25] Ex. F at 15.

As above, Plaintiffs responded to Interrogatory 12 in full by identifying and producing website pages and consumer complaints in Plaintiffs' possession.[26] Plaintiffs explained that Defendants' advertisements state that the company's services remove derogatory or negative information from, or improve, a consumer's credit history, credit record, or credit rating yet consumers complained that Defendants' services achieved no such result.[27] Plaintiffs also noted that it is an undue and disproportionate burden for Plaintiffs to fully respond to this type of interrogatory when it is Defendants, not Plaintiffs, who hold the relevant information.[28]

Finally, Defendants' Deposition Topic 3 to the Bureau and Topic 2 to the Commonwealth are nearly identical to Defendants' Interrogatory 5. Topic 3 to the Bureau seeks:

> The circumstances and date(s) on which the Bureau first became aware of:
> a. Key Credit's advertisements, representations or other statements upon which the Bureau *bases its claims* that Key Credit violated the TSR;
> b. Key Credit's practice for how and when it billed customers; and
> c. facts the Bureau believes are sufficient to support the allegations for Counts I through IV of the Amended Complaint.[29]

Topic 2 to the Commonwealth seeks:

> The circumstances and date(s) on which the MAAG first became aware of:
> a. Key Credit's advertisements, representations or other statements upon which the MAAG bases its claims that Key Credit violated the MA-UDAP and/or the MA-CSO; and
> b. facts the Bureau (sic) believes are sufficient to support the allegations for

---

[26] Ex. F at 15-17.
[27] *Id.*
[28] *Id.*
[29] Ex. A (emphasis added).

Counts V through IX of the Amended Complaint.[30]

Defendants' Interrogatory 5 asked Plaintiffs to:

> State the date(s) on which you first became aware of the facts that gave rise to each of the claims in the Complaint, state those facts and describe how you first became aware of those facts. Your answer should state the precise date and identify specific documents, facts, and any other information that support when you first learned of the claims.[31]

Plaintiffs responded to Interrogatory 5 in full, explaining in detail the circumstances and dates they became aware of facts underlying all counts in the Amended Complaint.[32] And as with the other interrogatories, Plaintiffs also produced all non-privileged responsive documents related to its response to Interrogatory 5.[33]

Defendants know, or should know, that they already have in their possession all of the factual information that they now purport to seek in their Deposition Notice. Requiring Plaintiffs to prepare a witness and to defend the noticed 30(b)(6) deposition would place an undue burden and expense upon the agency and would provide Defendants with nothing more than that which they already have obtained by the proper, less-burdensome discovery method of interrogatories and the production of documents.

## **CONCLUSION**

For all the reasons stated above, the Court should grant Plaintiffs' request for a protective order.

---

[30] Ex. B (emphasis added).
[31] Ex. F at 5.
[32] *Id*. at 5-9.
[33] *Id*.

Dated October 4, 2022

Respectfully submitted,
s/ Nelle Rohlich
Nelle Rohlich (WI Bar No. 1047522)
(202) 435-7280
Carmen Christopher
Benjamin Konop
(202) 435-7280
Nelle.Rohlich@cfpb.gov
Benjamin.Konop@cfpb.gov
Bureau of Consumer Financial
Protection
1700 G Street, NW
Washington, D.C. 20552
*Attorneys for Plaintiff Bureau of*
*Consumer Financial Protection*


s/ Lilia V. DuBois
Lilia V. DuBois (MA Bar No. 688848)
(617) 963-2239
Lilia.DuBois@state.ma.us
Assistant Attorney General
Insurance & Financial Services Division
One Ashburton Place, 18th Floor
Boston, MA 02108
*Attorney for Plaintiff the*
*Commonwealth of Massachusetts*