IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION and the COMMONWEALTH OF MASSACHUSETTS *ex rel.* Maura Healey, Attorney General,<br><br>Plaintiffs,<br><br>v.<br><br>COMMONWEALTH EQUITY GROUP, LLC d/b/a KEY CREDIT REPAIR and NIKITAS TSOUKALES a/k/a NIKITAS TSOUKALIS<br><br>Defendants. | No. 20-cv-10991<br><br>Judge Rya W. Zobel |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendants Commonwealth Equity Group, LLC d/b/a Key Credit Repair and Nikitas Tsoukalis (together, "Key Credit") respectfully move for judgment on the pleadings as to Counts I-V of the Amended Complaint of plaintiffs Bureau of Consumer Financial Protection (the "Bureau") and the Commonwealth of Massachusetts. In support of this motion, Key Credit states as follows:

**INTRODUCTION**

1. Recently developed case law has highlighted the unconstitutionality of the Bureau's unusual funding mechanism. In bringing Counts I-IV of the Amended Complaint, the Bureau has employed, and is continuing to employ, unappropriated and unconstitutional funding sourced from the Federal Reserve. Absent this unconstitutional funding, the Bureau lacks the means to bring

this action, and the Bureau's use of unappropriated funds in prosecuting the Amended Complaint has thus harmed Key Credit. Counts I-IV are an invalid exercise of the Bureau's authority.

2. Since the filing of the instant matter, the legal landscape has changed. On October 19, 2022, the U.S. Court of Appeals for the Fifth Circuit held that "Congress's cession of its power of the purse to the Bureau violates the Appropriations Clause and the Constitution's underlying structural separation of powers." *Community Financial Services Association of America, Limited v. CFPB*, 51 F.4th 616, 644 (5th Cir. 2022) ("*CFSA*"). The Fifth Circuit explained that the Bureau derives its funding not from an appropriation from Congress, but instead from the Federal Reserve which "is itself outside the appropriations process." *Id*. at 638-39. The Fifth Circuit found this double-insulation to be unconstitutionally infirm, both because the Bureau's "funding is double-insulated on the front end from Congress's appropriations power" and because "Congress relinquished its jurisdiction to review [Bureau] funding on the back end." *Id*. at 639. Therefore, the Fifth Circuit held, the "Bureau's funding apparatus cannot be reconciled with the Appropriations Clause and the clause's underpinning, the constitutional separation of powers," and consequently, the Bureau "lack[s] the wherewithal to exercise [ ] power via constitutionally appropriated funds." *Id*. at 642, 643.

3. For these reasons, and as set forth more fully below, Key Credit should be awarded judgment on the pleadings on Counts I-IV of the Amended Complaint, and those Counts should be dismissed. In addition, judgment should be entered in Key Credit's favor on Count V of the Amended Complaint because, although it is brought by plaintiff Commonwealth of Massachusetts, it is expressly predicated on the viability of Counts I-IV.

# ARGUMENT

## I. Legal Standard.

4. "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." *Afrasiabi v. United Press International*, 561 F. Supp. 3d 1, 5 (D. Mass. 2021) (citing Fed. R. Civ. P. 12(c)). Judgment on the pleadings is proper when "the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." *Id*. (citing *Zipperer v. Raytheon Co.*, 493 F. 3d 50, 53 (1st Cir. 2007)); *see also Maryland v. Louisiana*, 451 U.S. 725, 751-52 (1981) (finding movant was entitled to judgment on the pleadings because the statute at issue was unconstitutional).

## II. The Relevant Facts Are Uncontested.

5. The Bureau is an independent agency of the United States. (Am. Compl. at ¶ 4.) *See also* 12 U.S.C. § 5491. The Consumer Financial Protection Act (the "Act") provides the Bureau with "independent litigating authority" to enforce the "Federal consumer financial laws." (*See* Am. Compl. at ¶ 4.) *See also* 12 U.S.C. §§ 5563, 5564(a)-(b). Pursuant to that authority, the Bureau has brought this action to enforce, among other things, the Telemarketing Sales Rule, 16 C.F.R. §§ 310.3, 310.4, against Key Credit. (Am. Compl. at ¶ 4, Counts I-IV.)

6. The Bureau does not rely on the Congressional "annual appropriations process for funding." *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2193-94 (2020); *see also* 12 U.S.C. § 5497(a). Instead, it receives funding "directly from the Federal Reserve." *Seila Law*, 140 S. Ct. at 2194; 12 U.S.C. § 5497(a). Each year, the Bureau simply requisitions from the Federal Reserve an amount "determined by the [Bureau's] Director to be reasonably necessary to carry out the Bureau's functions." 12 U.S.C. § 5497(a); *see also Seila Law*, 140 S. Ct. at 2194. The Federal Reserve

must grant that request so long as it does not exceed 12% of the Federal Reserve's "total operating expenses." 12 U.S.C. § 5497(a)(1)-(2); *see also Seila Law*, 140 S. Ct. at 2194.

7. Thus, "Congress did not merely cede *direct* control over the Bureau's budget by insulating it from annual or other time limited appropriations. It also ceded *indirect* control by providing the Bureau's self-determined funding be drawn from a source that is itself outside the appropriations process. *CFSA*, 51 F.4th at 638-39. Further, the Bureau is "literally off the books: Rather than hold funds in a Treasury account," it "maintains a separate fund" at the Federal Reserve bank that is "permanently available" to the Director "without any further act of Congress." *Id*. at 639 (internal quotation marks and citation omitted).

8. The funding employed by the Bureau to "enforc[e] 'Federal consumer financial laws'" and exercise its "independent litigating authority" in connection with this action was drawn from funds transferred to the Bureau from "the combined earnings of the Federal Reserve System," in accordance with the process detailed above and at 12 U.S.C. § 5497(a)(1). (*See also* Am. Compl. at ¶ 4.) In the Fifth Circuit's view, the "Bureau's perpetual insulation from Congress's appropriations power, including the express exemption from congressional review of its funding, renders the Bureau no longer dependent and, as a result, no longer accountable to Congress and, ultimately, to the people." *CFSA*, 51 F.4th at 639. "By abandoning its 'most complete and effectual' check on 'the overgrown prerogatives of the other branches of the government' – indeed, by enabling them in the Bureau's case – Congress ran afoul of the separation of powers embodied in the Appropriations Clause." *Id*. at 639-40 (quoting The Federalist No. 58 (J. Madison)).

**III. Counts I-V Must Be Dismissed Because The Funding Employed By The Bureau To Bring This Action Was Not Constitutionally Appropriated.**

9. The Framers of the Constitution "carefully separate[d] the 'purse' from the 'sword' by assigning to Congress and Congress alone the power of the purse." *CFSA*, 51 F.4th at 635; *see*

*also Seila Law*, 140 S. Ct. at 2203. Their reasoning was twofold: first, "they viewed Congress's exclusive "power over the purse" as an indispensable check on "the overgrown prerogatives of the other branches of government." *CFSA*, 51 F.4th at 636 (citing The Federalist No. 58); *Seila Law*, 140 S. Ct. at 2203 (Congress's "power over the purse" is "the most complete and effectual weapon in representing the interests of the people"). Second, the Framers believed that "vesting Congress with control over fiscal matters was the best means of ensuring transparency and accountability to the people." *CFSA*, 51 F.4th at 636 (citing The Federalist No. 48).

10. The Constitution's Appropriations Clause is a "straightforward and explicit command" that "ensures Congress's *exclusive* power over the federal purse." *CFSA*, 51 F.4th at 637 (citing *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990)) (emphasis in original). Indeed, Congress is "obligate[d] to use that authority to maintain the boundaries between the branches and preserve individual liberty from the encroachments of executive power." *Id*. at 637 (internal quotation omitted). Accordingly, "[a]ny exercise of a power granted by the Constitution to one of the other branches of Government is limited by a valid reservation of congressional control over the funds in the Treasury." *Richmond*, 496 U.S. at 425.

11. The Bureau's funding mechanism violates the Appropriations Clause and the separation of powers principles embodied in it. *CFSA*, 51 F.4th at 635-42 (holding that the Bureau's funding mechanism is unconstitutional because it impermissibly places the Bureau outside of the congressional appropriations process). As set forth above, the CFPB receives its funding "outside the appropriations process," directly from the Federal Reserve. *Seila Law*, 140 S. Ct. at 2194, 2203; 12 U.S.C. § 5497. Each year, rather than submit to Congressional oversight and seek an appropriation from Congress, the Bureau's Director unilaterally "determine[s]" an amount "reasonably necessary to carry out the authorities of the Bureau under Federal consumer

financial law," and the Federal Reserve is then required to transfer that amount to the Bureau. *Seila Law*, 140 S. Ct. at 2194; 12 U.S.C. § 5497(a)(1). (These "authorities" include the authority to bring the instant action against Key Credit, (*see* Am. Compl. at ¶ 4).)

12. The Act therefore causes Congress to cede direct control over the Bureau's budget by insulating the Bureau from the congressional appropriations process, and it causes Congress to cede indirect control over the Bureau's budget by providing that the Bureau's (self-determined) funding is to be drawn from a source that is itself outside the appropriations process. *See CFSA*, 51 F.4th at 638-39. Going further, the Act then makes explicit that the funds provided to the Bureau through this process "shall not be construed to be Government funds or appropriated monies," thereby causing Congress to relinquish even its jurisdiction to review the Bureau's funding *ex post*. *See* 12 U.S.C. § 5497(c)(2); *see also CFSA*, 51 F.4th at 639. "Wherever the line between a constitutionally and unconstitutionally funded agency may be, this unprecedented arrangement crosses it." *CFSA*, 51 F.4th at 639.

13. It is uncontested and beyond dispute that the funding employed by the Bureau to "enforce the federal consumer financial laws and exercise its independent litigating authority" in connection with this action was obtained through the funding mechanism described above. The funding employed by the Bureau to bring this action against Key Credit therefore was not constitutionally appropriated. Because the funding employed by the Bureau to bring this action was wholly drawn – and continues to be wholly drawn – "through the Act's unconstitutional funding scheme, there is a linear nexus between the infirm provision (the Bureau's funding mechanism)" and the prosecution of Counts I-IV of the Amended Complaint. *See CFSA*, 51 F.4th at 643. Without its "unconstitutional funding," the Bureau lacks any other means to prosecute this case. *See id*. Key Credit was "thus harmed by the Bureau's improper use of unappropriated funds

to [bring this action]," and it is entitled to judgment dismissing Counts I-IV as a "product of the Bureau's unconstitutional funding scheme." *See id*.

14. Indeed, just last month, the U.S. Court of Appeals for the Ninth Circuit vacated a nearly $8 million judgment won by the Bureau and remanded the case to the district court for further analysis based on the Fifth Circuit's ruling on the constitutionality of the Bureau. *See CFPB v. Nationwide Biweekly Administration, Inc.*, No. 18-15431 (9th Cir. Jan. 27, 2023).

15. *CFSA* establishes that Key Credit should be awarded a judgment on the pleadings on Counts I-V of the Amended Complaint. According to the Fifth Circuit's holding, every Bureau action funded outside the appropriation process – such as this one – is itself unlawful. The Bureau lacks any constitutional means to spend money, and "[b]ecause the funding employed by the Bureau" to prosecute this case is "wholly drawn through the agency's unconstitutional funding scheme," Key Credit is "entitled to a 'rewinding of [the Bureau's] action.'" *CFSA*, 51 F.4th at 643 (quoting *Collins v. Yellen*, 141 S. Ct. 1761, 1788 (2021)).

16. For all of these reasons, Key Credit should be awarded a judgment on the pleadings enjoining the Bureau from bringing this action and dismissing Counts I-IV of the Amended Complaint. *See id*. In addition, judgment should be entered in Key Credit's favor on Count V because, although it is brought by plaintiff Commonwealth of Massachusetts, it is expressly predicated on the viability of Counts I-IV. (*See* Am. Compl. at Count V.)

WHEREFORE, for all of the foregoing reasons, Key Credit respectfully requests that the Court grant judgment on the pleadings in its favor on Counts I-V of the Amended Complaint.

Respectfully submitted,

COMMONWEALTH EQUITY GROUP, LLC
(d/b/a KEY CREDIT REPAIR) and NIKITAS
TSOUKALIS,

By their attorneys,

___/s/ David B. Mack________________________
David B. Mack (BBO # 631108)
dmack@ocmlaw.net
Stephanie R. Parker (BBO # 687610)
sparker@ocmlaw.net
O'Connor, Carnathan & Mack, LLC
67 South Bedford Street, Suite 400W
Burlington, MA 01803
Tel: 781-359-9000

Timothy A. Hudson, pro hac vice
thudson@tdrlawfirm.com
Jordan E. Wilkow, pro hac vice
jwilkow@tdrlawfirm.com
TABET DIVITO & ROTHSTEIN LLC
209 S. LaSalle St., 7th Floor
Chicago, IL 60604
Tel: (312) 762-9450
Fax: (312) 762-9451

Dated: February 17, 2023

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(a)(2)

I, David B. Mack, hereby certify that counsel conferred and attempted in good faith to resolve or narrow the issues raised herein but were unable to reach an agreement.

___/s/ David B. Mack____________________
David B. Mack

**CERTIFICATE OF SERVICE**

I hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 17, 2023.

________/s/ David B. Mack_____________
David B. Mack