UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION and the COMMONWEALTH OF MASSACHUSETTS *ex rel*. ANDREA CAMPBELL, ATTORNEY GENERAL,<br><br>Plaintiffs,<br><br>v.<br><br>COMMONWEALTH EQUITY GROUP, LLC (d/b/a KEY CREDIT REPAIR) and NIKITAS TSOUKALES (a/k/a NIKITAS TSOUKALIS),<br><br>Defendants. | Civil Action No. 1:20-cv-10991-IT |

**ORDER AWARDING PLAINTIFFS MONETARY AND INJUNCTIVE RELIEF, ASSESSING CIVIL MONEY PENALTIES, AND ENTERING FINAL JUDGMENT AGAINST ALL DEFENDANTS ON COUNTS I–IX**

Based on the findings set forth in the court's Memorandum and Order [Doc. No. 145] granting the Motion for Summary Judgment [Doc. No. 115] by Plaintiffs Bureau of Consumer Financial Protection ("Bureau") and the Commonwealth of Massachusetts *ex rel*. Andrea Campbell, Attorney General ("the Commonwealth") against Defendants Commonwealth Equity Group, LLC (d/b/a Key Credit Repair) ("Key Credit") and Nikitas Tsoukales (a/k/a Nikitas Tsoukalis), and denying Defendants' Motion for [Partial] Summary Judgment ("Defendants' Motion") [Doc. No. 110], the court enters the following ORDER:

**DEFINITIONS**

The following definitions apply to this Order:

1.     "Affected Consumers" includes any consumer who made a payment for Key Credit Repair's services, including for the initiation of those services, from January 1, 2011,

1

through the Effective Date.

2. "Assisting Others" includes, but is not limited to:

   a. consulting in any form whatsoever;

   b. providing paralegal or administrative support services;

   c. performing customer service functions, including but not limited to, receiving or responding to consumer complaints;

   d. formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including but not limited to, any telephone sales script, direct mail solicitation, or the text of any Internet website, email, or other electronic communication or advertisement;

   e. formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including but not limited to, web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

   f. providing names of, or assisting in the generation of, potential customers;

   g. performing marketing, billing, or payment services of any kind; and

   h. acting or serving as an owner, officer, director, manager, or principal of any entity.

3. "Clearly and prominently" means that:

   a. In textual communications, the disclosure must be of a type size and location sufficiently noticeable for an ordinary consumer to read and comprehend it, in print that contrasts with the background on which it appears;

   b. In communications disseminated orally or through audible means, the

        disclosure must be delivered in a volume and cadence sufficient for an ordinary consumer to hear and comprehend it;

   c.  In communications disseminated through video means (e.g., television or streaming video), the disclosure must be in writing in a form consistent with subsection (a), and must appear on the screen for a duration sufficient for an ordinary consumer to read and comprehend it;

   d.  In communications made through interactive media such as the internet, online services, and software, the disclosure must be unavoidable and presented in a form consistent with subsection (a); and

   e.  In all instances, the disclosure must be presented before the consumer incurs any financial obligation, in an understandable language and syntax, and with nothing contrary to, inconsistent with, or in mitigation of the disclosures used in any communication with the consumer.

4.   "Consumer" means any individual or an agent, trustee, or representative acting on behalf of an individual. Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. § 5481(4).

5.   "Consumer Financial Product or Service" is synonymous in meaning and equal in scope to the definition of the term in the CFPA, 12 U.S.C. § 5481(5), and, subject to applicable restrictions contained in the CFPA, includes but is not limited to:

   a.  providing financial advisory services to Consumers on individual consumer financial matters or relating to proprietary financial products or services, including providing credit counseling to any consumer or providing services to assist a Consumer with debt management or debt settlement, modifying the

    terms of any extension of credit, or avoiding foreclosure, 12 U.S.C.

    § 5481(15)(viii); and

  b. collecting, analyzing, maintaining, or providing consumer report information or other account information, including information relating to the credit history of Consumers, used or expected to be used in connection with any decision regarding the offering or provision of a Consumer Financial Product or Service 12 U.S.C. § 5481(15)(ix).

6. "Consumer Report" shall have the same meaning as in the Fair Credit Reporting Act, 15 U.S.C. §1681a(d).

7. "Credit-Repair Service" means any good or service represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating, whether or not bundled or otherwise sold in combination with other goods or services.

8. "Credit Services Organization" means a person or entity that sells, provides, performs, or who represents to sell, provide or perform for the payment of money or other valuable consideration one or more of three types of services, which include improving a buyer's credit record, history or rating and providing advice or assistance in support thereof.

9. "Defendants" means Key Credit Repair and Tsoukales, individually, collectively, or in any combination, and each of them by whatever names each might be known.

10. "Effective Date" means the date on which this Order is entered by the Court.

11. "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Consumer Financial Protection Bureau, or their delegate.

4

12. "Key Credit Repair" means Commonwealth Equity Group, LLC, d/b/a Key Credit Repair, and its successors and assigns.

13. "Person" means an individual, partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, or other entity.

14. "Related Consumer Action" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against a Defendant based on substantially the same facts as described in this Order.

15. Tsoukales" means Nikitas Tsoukales (a/k/a Nikitas Tsoukalis), and by any other names by which they might be known, in his individual capacity.

## ORDER

## I

## Conduct Relief

**IT IS ORDERED** that:

16. Defendants and their officers, agents, servants, employees, attorneys, and all other Persons in active concert or participation with them who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained, enjoined, and prohibited from requesting or receiving payment of any fee or consideration in connection with telemarketing Credit-Repair Services until:

    a. the time frame in which Defendants have represented all of their Credit-Repair Services will be provided to that Consumer has expired; and

    b. Defendants have provided the Consumer with documentation in the form of a Consumer Report from a consumer reporting agency demonstrating that the

promised results have been achieved, such report having been issued more than six months after the results were achieved.

17. Defendants and their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with them who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained, enjoined, and prohibited from, in connection with the advertising, marketing, promotion, offering for sale, sale or performance of any Consumer Financial Product or Service, mispresenting, or Assisting Others in misrepresenting, expressly or impliedly:

    a. the benefits that a Consumer will receive from the Consumer Financial Product or Service, including improvements or changes to Consumers' credit scores or credit reports; and

    b. the time required to achieve benefits from the Consumer Financial Product or Service.

18. For ten years from the Effective Date, Defendants and their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with them who receive actual notice of this Order, whether acting directly or indirectly, are restrained, enjoined, and prohibited from performing Credit-Repair Services on behalf of any Consumer unless and until they have entered into a written agreement with that Consumer that Clearly and Prominently states: (a) the Credit-Repair Services Defendants will perform for the Consumer; and (b) the time frame in which Defendants will perform all of the specified Credit-Repair services. The time frame stated in the agreement must be a fixed term and shall not continue on a periodic or month-to-month basis.

19.     For ten years from the Effective Date, Defendants and their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with them who receive actual notice of this Order, whether acting directly or indirectly, are restrained, enjoined, and prohibited from performing Credit repair services on behalf of a Consumer until they have entered into a written agreement with that Consumer that Clearly and Prominently: (a) states the result (or results) of the Credit repair Services that Defendants will seek to achieve for the Consumer; (b) states the specific amount the Consumer must pay if the result is achieved; (c) informs the Consumer that they will not be billed for services, and no payment is due, unless and until Defendants provide the Consumer with a Consumer Report demonstrating that the result has been achieved for the Consumer, such report having been issued more than six months after the result was achieved; (d) specifies when the payment for services will be due after the requirements of Paragraph 54 (a) and (b) have been met, which shall be no sooner than ten calendar days after payment is requested; (e) states that the Consumer has a right to proceed against the surety bond or trust account required under § 68B of the Massachusetts Credit Services Organization Law, M.G.L. c. 93, §§ 68A–68E ("MA-CSO"); and (f) states the name and business address of any such surety company and trust-account depository, together with the name of the trustee and the account number.

20.     For as long as Defendants are a credit services organization, Defendants and their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with them who have actual notice of this Order, whether acting directly or indirectly, are permanently restrained, enjoined, and prohibited from performing credit-repair services on behalf of any consumer unless and until they establish a trust account at a federally insured bank or savings and loan association within Massachusetts.

## II

## Cooperation with Plaintiffs

**IT IS FURTHER ORDERED** that:

21.  Defendants must cooperate fully to help Plaintiffs determine the identity and location of, and the amount of injury sustained by, each Affected Consumer. Defendants must provide such information in its or its agents' possession or control within 10 days of receiving a written request from either Plaintiff.

22.  Within 21 days of this Order, Defendants shall produce to Plaintiffs true and correct financial statements showing Defendant Key Credit's gross revenues from March 23, 2022, to the date of this Order.

23.  Within 21 days of this Order, the following information of all Consumers who enrolled in, or signed up for, a service offered by Key Credit after January 1, 2011, shall be produced to the Plaintiffs in a form specified by Plaintiffs:

   a. Consumer name;

   b. Consumer address;

   c. Consumer telephone number;

   d. Consumer email address;

   e. Sign-up date;

   f. Dates and amounts of all charges to Consumer's credit, debit, or pre-paid card;

   g. Cancellation date (if applicable);

   h. Gross amount paid by Consumer;

   i. Refund paid to Consumer (if applicable); and

      j.   Balance owed by Consumer (if applicable).

## III

## Prohibitions on Use of Customer Information

**IT IS FURTHER ORDERED** that:

24. Defendants and their officers, agents, servants, employees, attorneys, and all persons who are in active concert or participation with either Defendant, who receive actual notice of this Order, whether acting directly or indirectly, may not:

    a. disclose, use, or benefit from customer information, including names, addresses, telephone numbers, email addresses, social security numbers, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that Defendants obtained before the Effective Date; or

    b. attempt to collect, sell, assign, or otherwise transfer any right to collect payment from any Consumer who entered into an agreement related to Credit-Repair Services before the Effective Date.

However, customer information may be disclosed upon request by a government agency or as required by law, regulation, or court order.

## MONETARY PROVISIONS

## IV

## Order to Pay Redress

**IT IS FURTHER ORDERED** that:

25. A judgment for consumer redress is entered in favor of Plaintiffs and against Defendants, jointly and severally, for Defendants' violations of 12 U.S.C. §§ 5531, 5536; 16

C.F.R. § 310.4(a)(2); 16 C.F.R. § 310.3(a)(2); and Chapter 93A, as follows:

    a. $31,723,003 for all fees charged to Consumers from January 1, 2011, to March 22, 2022; and

    b. an amount corresponding to the fees Defendant Key Credit charged Consumers from March 23, 2022, to the earlier of the date Defendants ceased collecting advance fees or the date of this Order.

26.     Within 14 days of the Effective Date, Defendants must pay to the Bureau, by wire transfer to the Bureau or to the Bureau's agent, and according to the Bureau's wiring instructions, the total of the amounts specified in Subparagraphs 25 (a) and (b), in full satisfaction of the judgment ordered in Paragraph 25 of this Section.

27.     Any funds received by Plaintiffs in satisfaction of this judgment will be deposited into a fund or funds administered by the Bureau or the Bureau's agent according to applicable statutes and regulations to be used for redress for Affected Consumers, including legal restitution or the refund of moneys, and for any attendant expenses for the administration of any such redress.

28.     Defendants must cooperate fully to help Plaintiffs determine the identity and location of, and the amount of injury sustained by, each Affected Consumer as set forth in Paragraph 23. Defendants must provide such information in their or their agents' possession or control to Plaintiffs within 21 days of this Order.

29.     If the Bureau determines, in its sole discretion, that providing redress to consumers is wholly or partially impracticable or if funds remain after the administration of redress is completed, the Bureau will deposit any remaining funds in the U.S. Treasury. Defendants will have no right to challenge the Bureau's choice of remedies under this Section

and will have no right to contest the manner of distribution chosen by the Bureau.

30. Payment of redress to any Affected Consumer under this Order may not be conditioned on that Affected Consumer waiving any right.

## V

## Order to Pay Civil Money Penalty

**IT IS FURTHER ORDERED** that:

31. Under § 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law set forth in the Memorandum and Order [Doc. No. 146] and considering the factors in 12 U.S.C. § 5565(c)(3), Defendants must pay civil money penalties to the Bureau as follows:

   a. Key Credit must pay $9,570,091;

   b. Tsoukales must pay $9,570,091.

32. Within 10 days of the Effective Date, Defendants must pay their respective civil penalty amounts set forth in Paragraph 31 by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

33. The civil money penalties paid under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by § 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

34. Defendants must treat the civil money penalties paid under this Order as penalties paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Defendants may not:

   a. claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

   b. seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance

policy, with regard to any civil money penalty paid under this Order.

35. The civil penalty imposed by the Order represents a penalty paid to the United States Government, is not compensation for actual pecuniary loss, and thus, as to Defendant Tsoukales, is not subject to discharge under the Bankruptcy Code under 11 U.S.C. § 523(a)(7).

## VI

## Additional Monetary Provision

**IT IS FURTHER ORDERED that:**

36. In the event of default on a Defendant's obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

37. Defendants relinquish all dominion, control, and title to the funds paid under this Order to the fullest extent permitted by law and no part of the funds may be returned to the Defendants.

38. To satisfy this judgment, Defendants must transfer to the territory of the United States all assets located in foreign countries that are: (1) titled in the name, individually or jointly, of any Defendant; (2) held by any person or entity for the benefit of any Defendant or for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant.

39. Under 31 U.S.C. § 7701, each Defendant, unless it already has done so, must furnish to Plaintiffs its taxpayer identification numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

40. Within 30 days of the entry of a final judgment, order, or settlement in a Related Consumer Action, the relevant Defendant must notify the Enforcement Director of the final judgment, order, or settlement in writing. That notification must indicate the amount of redress, if any, that Defendant paid or is required to pay to Consumers and describe the Consumers or classes of Consumers to whom that redress has been or will be paid. To preserve the deterrent effect of the civil money penalties in any Related Consumer Action, neither Defendant may argue that the relevant Defendant is entitled to, nor may any Defendant benefit by, any offset or reduction of any compensatory monetary remedies imposed in the Related Consumer Action because of the civil money penalties paid in this action or because of any payment that the Bureau makes from the Civil Penalty Fund ("Penalty Offset"). If the court in any Related Consumer Action grants such a Penalty Offset to any Defendant, the Defendant must, within 30 days after entry of a final order granting the Penalty Offset, notify the Bureau, and pay the amount of the Penalty Offset to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalties imposed in this action.

## COMPLIANCE PROVISIONS

## VII

### Reporting Requirement

41. Each Defendant must notify Plaintiffs of any development that may affect compliance obligations arising under this Order, including but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or

against any Defendant; or a change in a Defendant's name or address. The Defendant must provide this notice, if practicable, at least 30 days before the development, but in any case, no later than 14 days after the development. Within 30 days of the Effective Date, each Defendant must:

    a. designate at least one telephone number and email, physical, and postal address as points of contact, which Plaintiffs may use to communicate with Defendant;

    b. designate at least one telephone number and email, physical, and postal addresses as points of contact for Consumers with inquiries related to Consumer relief under the Order;

    c. identify all businesses for which Defendant is the majority owner, that Defendant directly or indirectly controls, by all of their names, telephone numbers, and electronic, physical, and postal addresses;

    d. Describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales;

    e. Identify Defendant Tsoukales' telephone numbers and all email, Internet, physical, and postal addresses, including all residences;

    f. Describe in detail Defendant Tsoukales' involvement in any business for which he performs services in any capacity or which he wholly or partially owns, including Defendant's title, role, responsibilities, participation, authority, control, and ownership.

42. Defendants must report any change in the information required to be submitted under Paragraph 41 at least 30 days before the change, or as soon as practicable after learning about the change, whichever is sooner.

## VIII

## Order Distribution and Acknowledgment

**IT IS FURTHER ORDERED that**:

43. Within 7 days of the Effective Date, Defendants must each submit to the Plaintiffs an acknowledgment of receipt of this Order, sworn under penalty of perjury.

44. Within 30 days of the Effective Date, Defendant Key Credit and Defendant Tsoukales, for any business for which he is the majority owner or which he directly or indirectly controls, must deliver a copy of this Order to each of its executive officers, and attorneys, as well as to any managers, employees, service providers, or other agents and representatives who have responsibilities related to the subject matter of the Order.

45. For ten years from the Effective Date, Defendant Key Credit and Defendant Tsoukales, for any business for which he is the majority owner or which he directly or indirectly controls, must deliver a copy of this Order to any business entity resulting from any change in structure referred to in Section VII, any future executive officers, and attorneys before they assume their responsibilities, as well as to any managers, employees, service providers, or other agents and representatives who will have responsibilities related to the subject matter of the Order before they assume their responsibilities.

46. Each Defendant must secure a signed and dated statement acknowledging receipt of a copy of this Order, within 30 days of delivery, from all persons receiving a copy of this Order under this Section.

47.     Ninety days after the Effective Date, each Defendant must submit to Plaintiffs a list of all persons and their titles to whom this Order was delivered through that date under this Section and a copy of all signed and dated statements acknowledging receipt of this Order under Paragraph 84.

## IX

## Recordkeeping

**IT IS FURTHER ORDERED** that:

48.     For at least ten years from the Effective Date, Defendants must create, or if already created, must retain the following business records:

  a. All documents and records necessary to demonstrate full compliance with each provision of this Order, including all submissions to Plaintiffs;

  b. Recordings of all telephone calls discussing Credit repair Services with prospective customers prior to enrollment;

  c. All telephone scripts related to Credit-Repair Services;

  d. Telemarketing registrations and licenses and applications for such registrations and licenses;

  e. All contracts with a telemarketer for advertisings or marketing services;

  f. Audited financial statements for all Defendants; and

  g. All Consumer complaints and refund requests (whether received directly or indirectly, such as through a third party), and any responses to those complaints or requests.

Defendants must make these materials available to Plaintiffs upon the Plaintiffs' request.

## X

## Notices

**IT IS FURTHER ORDERED** that:

49. Unless otherwise directed in writing by Plaintiffs, Defendants must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, "CFPB et al. v. Commonwealth Equity Group, LLC. et al., Case No.1:20-cv-10991-IT," and send them by email to Enforcement_Compliance@cfpb.gov:

> Assistant Director for Enforcement Consumer Financial Protection Bureau
> ATTENTION: Office of Enforcement

And to the below address and contemporaneously by email to IFScorrespondence@mass.gov:

> Division Chief
> Insurance and Financial Services Division Massachusetts Attorney General's Office 1 Ashburton Place
> Boston, MA 02108

## XI

## Compliance Monitoring

**IT IS FURTHER ORDERED** that, to monitor Defendants' compliance with this Order:

50. Within 21 days of receipt of a written request from Plaintiffs, Defendants must submit all requested information, which must be sworn under penalty of perjury; provide sworn testimony; or produce documents.

51. For purposes of this Section, Plaintiffs may communicate directly with either Defendant, unless that Defendant retains counsel related to the communications.

52. Defendants must permit Plaintiffs' representatives to interview any employee or other person affiliated with Defendants who has agreed to such an interview regarding compliance with this Order. The person interviewed may have counsel present.

53.     Nothing in this Order will limit the Bureau's lawful use of compulsory process, under 12 C.F.R. § 1080.

## XII

## Transfer of Assignment of Operations

**IT IS FURTHER ORDERED that:**

54.     Should Defendants seek to transfer or assign all or part of their operations that are subject to this Order, Defendants must, as a condition of sale, obtain the written agreement of the transferee or assignee to comply with all applicable provisions of this Order.

## XIII

## Retention of Jurisdiction

**IT IS FURTHER ORDERED that**:

55.     The Court will retain jurisdiction of this matter for the purpose of enforcing this Order.

## XIV

## ENTRY OF FINAL JUDGMENT

56.     Pursuant to Fed. R. Civ. P. 54(b), having found that no just reason for delay exists, this Court directs the entry of final judgment as to all Defendants, as provided in this Order, on all Counts of Plaintiffs' Amended Complaint.

IT IS SO ORDERED.

September 30, 2024                    /s/ Indira Talwani
                                      United States District Judge