IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Consumer Financial Protection Bureau and the Commonwealth of Massachusetts *ex rel.* Andrea Campbell, Attorney General,<br><br>Plaintiffs,<br><br>v.<br><br>Commonwealth Equity Group, LLC (d/b/a Key Credit Repair) and Nikitas Tsoukales (a/k/a Nikitas Tsoukalis),<br><br>Defendants. | Case No. 1:20-cv-10991-IT |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION**

Defendants move under Federal Rule of Civil Procedure 59(e) to alter or amend the Court's final judgment in this case, entered September 30, 2024. *See* Defs.' Mot. for Recons. ("Mot."), ECF No. 150. Specifically, they seek reconsideration of the Court's award of legal restitution and civil money penalties. But Defendants never raised any of the arguments they now offer prior to the Court entering judgment. They cannot do so for the first time on a motion for reconsideration. If the Court does not deny the motion on that basis, it should reject Defendants' arguments as meritless.

**LEGAL STANDARD**

"A motion to alter or amend a judgment may be granted under Rule 59 only if the movant demonstrates that [1] an intervening change in controlling law, [2] a clear legal error, or [3] newly discovered evidence warrants modification of the judgment." *In re Genzyme Corp. Sec. Litig.*, 754 F.3d 31, 46 (1st Cir. 2014). "[A] party cannot use a Rule 59(e) motion to rehash

arguments previously rejected or to raise ones that could, and should, have been made before judgment issued." *Soto-Padro v. Pub. Bldgs. Auth.*, 675 F.3d 1, 9 (1st Cir. 2012) (quotation marks omitted). "The granting of a motion for reconsideration is an extraordinary remedy which should be used sparingly." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006) (quotation marks omitted).[1]

## ARGUMENT

The Court should deny the motion for reconsideration.

### I. Defendants failed to properly raise their arguments prior to judgment.

The First Circuit and this Court "have held time and again" that "a Rule 59(e) motion 'does not provide a vehicle for a party to undo its own procedural failures' or to 'introduce new evidence or advance arguments that could and should have been presented to the district court prior to judgment.'" *Quality Cleaning Prod. R.C., Inc. v. SCA Tissue N. Am., LLC*, 794 F.3d 200, 208 (1st Cir. 2015) (quoting *Emmanuel v. Int'l Bhd. of Teamsters, Loc. Union No. 25*, 426 F.3d 416, 422 (1st Cir. 2005)); *see also, e.g.*, *SEC v. Commonwealth Equity Servs., LLC*, 718 F. Supp. 3d 113, 115-16 (D. Mass. 2024) ("A party is not entitled to present new arguments on a motion for reconsideration.").

Defendants' motion for reconsideration consists entirely of new arguments that Defendants could and should have presented to the Court prior to judgment but chose not to. Defendants filed more than 80 pages of briefing at summary judgment. *See* ECF Nos. 111, 119, 126. Yet nowhere in those lengthy submissions did Defendants even mention restitution or civil penalties—even after Plaintiffs requested both forms of relief in their opening motion and

[1] Defendants' motion also references Rule 54(b). Mot. at 1. Because that rule does not authorize the reconsideration of final judgments (like the Court's here) adjudicating all the claims and all the parties' rights and liabilities, it has no relevance here and does not help Defendants.

supported that request with extensive discussion of the record evidence and relevant legal authority, *see* ECF No. 116 at 26-38. Defendants cannot raise their arguments now.

True, one of Defendants' summary judgment briefs made passing reference to "the applicable statute of limitations." ECF No. 119 at 33. But Defendants made no effort to articulate that defense and explain why any of Plaintiffs' claims were time-barred. Their only point was that they had asserted various affirmative defenses in their amended answer (including with respect to the statute of limitations) and that "Plaintiffs' motion [for summary judgment] raises no challenge to these affirmative defenses." *Id.* at 34. But, as Plaintiffs explained at the time, "affirmative defenses do not preclude summary judgment in favor of plaintiff" and are not properly raised where, as here, a party makes no effort to "elaborate" on the defenses in its briefs. *Bank of New York Mellon v. Lezdey*, No. 13-cv-11118-MLW, 2016 WL 5539759, at *10 (D. Mass. Aug. 25, 2016); *see also* ECF No. 128 at 18 n.76 (collecting numerous other decisions of this Court, the Supreme Court, and the First Circuit so holding).

Because it is well established that "a party cannot use a Rule 59(e) motion … to raise [arguments] that could, and should, have been made before judgment issued," *Soto-Padro*, 675 F.3d at 9, the Court can deny the motion without reaching the merits of Defendants' arguments.

## II. Defendants' belatedly raised arguments are meritless.

If the Court does reach the merits of Defendants' arguments, it should reject them. Defendants say that reconsideration is warranted because the Court committed "manifest error[s] of law." Mot. at 2; *see also Genzyme Corp.*, 754 F.3d at 46. But they identify no error at all in the Court's sound decision—let alone a clear legal error.[2]

---

[2] Defendants also allege in passing (at 2) that the Court "patently misunderstood a party." The Court, however, could not have "misunderstood" arguments that Defendants never offered.

**A. The Court's restitution award was correct.**

Defendants first claim that the restitution award must be reconsidered because it provides redress for violations that occurred outside the statute of limitations. Defendants appear to misunderstand both the basis for the restitution award and the applicable limitations period. They point to a Massachusetts statute that they say governs Counts V-IX. Mot. at 2 (citing M.G.L.A. 260 § 5A). But the Court did not order restitution for those counts. Instead, it found that "Defendants' violation *of the TSR's advance-fee provision* [i.e., Count I] warrants legal restitution" and awarded restitution for that count alone. Mem. & Order at 39, ECF No. 146 (emphasis added). The Massachusetts statute of limitations does not apply to Count I, and Defendants do not argue otherwise.

Defendants also cite 15 U.S.C. § 57b(d). But Section 57b(d) by its terms applies to actions "brought by the [Federal Trade] Commission under th[at] section." This action was not brought by the FTC under Section 57b, so it is not governed by that statute of limitations.

Lastly, Defendants arrive at 12 U.S.C. § 5564(g)(1). Mot. at 2. Plaintiffs agree that this provision governs the Bureau's claims for relief under Count I. The problem for Defendants is that Section 5564(g)(1) bars only those actions that are brought "more than 3 years after the date of discovery of the violation to which an action relates," and Defendants never showed that the Bureau discovered any of the violations at issue in this case more than three years before suing. Defendants thus have not and could not demonstrate that the statute of limitations barred the Bureau from addressing any violations at issue in Count I or that the Court made any error in the redress award based on the statute of limitations.

**B. The Court appropriately assessed civil penalties.**

Defendants' next alleged clear error of law is that the Court "assessed civil penalties"

without first "order[ing] an assessment." Mot. at 3. This claim makes little sense on its face and fares no better on closer examination. Defendants quote the CFPA's requirement that "[n]o civil penalty may be assessed …, unless … the appropriate court has ordered *such assessment* and entered judgment in favor of the Bureau." 12 U.S.C. § 5565(c)(5). Defendants seem to read the phrase "such assessment" to refer not to the "assess[ment]" of penalties referred to earlier in the same provision—an "assess[ment]" that they agree occurred here—but to a hearing or some other unspecified additional process. That is not a plausible reading of the statutory language. That provision simply provides that the Bureau may not impose civil penalties without due process—either the process afforded by notice and an opportunity for a hearing in an administrative adjudication, *id.* § 5565(c)(5)(A), or by proceeding in court, *id.* § 5565(c)(5)(B). It does not dictate any particular procedures when the Bureau sues in court beyond those afforded in any other civil litigation. It requires only that the court agree that penalties are warranted and enter judgment in favor of the Bureau. *Id.*

Contrary to Defendants' view, courts regularly order civil penalties without holding a special hearing on penalties or affording whatever other additional process Defendants may envision. *E.g.*, *CFPB v. Nesheiwat*, No. 21-56052, 2022 WL 17958636, at *2 (9th Cir. Dec. 27, 2022) (affirming civil penalties awarded at summary judgment); *CFPB v. Glob. Fin. Support, Inc.*, No. 15-cv-2440, 2021 WL 242939, at *16 (S.D. Cal. Jan. 25, 2021) (awarding civil penalties at summary judgment), *aff'd*, 54 F.4th 1168 (9th Cir. 2022).

And while Defendants say (at 3) that they needed "an opportunity to present evidence and argument germane to" penalties, they had that opportunity at summary judgment and chose instead to "ma[k]e no arguments … [concerning] the nature and scope of relief the Plaintiffs sought," Mem. & Order at 38.

**C. The amount of penalties assessed was proper.**

Defendants also challenge the amount of civil penalties the Court ordered. Defendants contend that the penalties—$9,570,091 against each Defendant—are unconstitutionally excessive under the Eighth Amendment and violate due process, and that the penalty assessed against Defendant Nikitas Tsoukales failed to adequately account for the statutory factors in 12 U.S.C. § 5565(c)(3). Defendants are wrong on each count.

1. "For a fine to be excessive under the Eighth Amendment, it must be 'grossly disproportional to the gravity of the defendant's offense.'" *United States v. Facteau*, 89 F.4th 1, 44 (1st Cir. 2023) (quoting *United States v. Bajakajian*, 524 U.S. 321, 337 (1998)). Defendants argue that the penalties were disproportional to the gravity of their CFPA violations because, in their view, those violations were mere technicalities that did not harm consumers. Mot. at 5-7.

To start, because the penalties are within the bounds expressly set by Congress—and in fact represent just "fifteen percent of the maximum penalty amount" authorized by statute, Mem. & Order at 48—they are presumptively constitutional. *See Bajakajian*, 524 U.S. at 336 ("[J]udgments about the appropriate punishment for an offense belong in the first instance to the legislature."); *cf. United States v. Carpenter*, 941 F.3d 1, 11 (1st Cir. 2019) (affirming civil forfeiture award that fell below the "maximum fine authorized" and "giv[ing] great weight to this statutory judgment by Congress").

Defendants cannot overcome that presumption. The Court correctly found (and Defendants' motion does not dispute) that Defendants ran an illegal credit-repair telemarketing operation for "more than a decade at least." Mem. & Order at 42. Defendants made deceptive misrepresentations to consumers and, after luring those consumers in, charged them more than $30 million in illegal fees. *Id.* at 47-48. Consumers were harmed not just by having to pay

millions in fees they did not actually owe but by the emotional distress of having "sought assistance from Key Credit" for help improving their credit, "only to lose money for no results." *Id.* at 48. As the Court concluded, "Key Credit's violations were significant and the harm caused to consumers severe." *Id.* at 47. Defendants disagree, going so far as to suggest (at 7) that their violations caused no harm at all. That baseless denial, and Defendants' failure to take responsibility for their actions even at this late date, do not demonstrate that the penalties were "grossly disproportional"—much less show a clear error of law in the Court's decision.

2. Next, Defendants attempt to recast the same basic argument—that their years of preying on credit-distressed consumers were not sufficiently serious to justify penalties—as a due process claim. *See* Mot. at 7-9. But the framework on which they rely, from *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), is for punitive damages, and no punitive damages were awarded in this case. (In fact, the CFPA specifically does not authorize "the imposition of … punitive damages." 12 U.S.C. § 5565(a)(3).) This case involves civil money penalties. And as the First Circuit has held, "*BMW* does not apply to cases like this one that involve a penalty set by statute." *United States v. Toth*, 33 F.4th 1, 19 (1st Cir. 2022) (citing *Sony BMG Music Ent. v. Tenenbaum*, 719 F.3d 67, 70-71 (1st Cir. 2013)). Defendants' due process argument is thus foreclosed at the outset, on top of being wrong about the gravity of the violations.[3]

3. Finally, Defendants seek reconsideration of the penalty against Tsoukales on the ground that the Court committed a manifest error of law when it weighed "the size of [Tsoukales's] financial resources" as part of its penalty analysis. 12 U.S.C. § 5565(c)(3)(A); *see* Mot. at 9-11.

---

[3] Defendants refer at one point to a "$40 million penalty against [Defendant] Key Credit," Mot. at 7, but the penalty assessed against Key Credit was for $9.6 million. Order Awarding Pls.' Monetary and Injunctive Relief ¶ 31, ECF No. 147.

Defendants concede, as they must, that the Court considered this factor in setting penalties. Mot. at 10. Not just that—the Court cited Tsoukales's financial resources as reason for ordering a significantly lower civil penalty than the amount Plaintiffs sought and the statute allowed. ECF No. 146 at 46-48.

Defendants then are left to argue that the Court committed a clear error of law by not giving this factor even more weight—and ordering an even lower penalty—than it did. But the statute entrusts that weighing to the Court's sound discretion. *See* 12 U.S.C. § 5565(c)(3) ("In determining the amount of any penalty … *the court* shall take into account the appropriateness of the penalty with respect to [the statutory factors]."). Defendants' mere disagreement with the Court's reasonable judgment on this factor does not come close to showing the sort of clear error that Defendants need in order to prevail on their motion for reconsideration—particularly given Defendants' failure at summary judgment to identify any record evidence or legal authority that they believed supported a lower penalty.

**CONCLUSION**

For all these reasons, the Court should deny Defendants' motion for reconsideration.

Dated: November 12, 2024

Respectfully submitted,

/s/ Lila V. DuBois
Lilia V. DuBois (MA Bar No. 688848)
(617) 963-2239
Lilia.DuBois@state.ma.us
Assistant Attorney General
Insurance & Financial Services Division
One Ashburton Place, 18th Floor
Boston, MA 02108

*Attorney for Plaintiff*
*Commonwealth of Massachusetts*

/s/ Kevin E. Friedl
Kevin E. Friedl (NY Bar No. 5240080)
Nelle Rohlich (WI Bar No. 1047522)
(202) 435-9268 (Friedl)
(202) 435-7280 (Rohlich)
Kevin.Friedl@cfpb.gov
Nelle.Rohlich@cfpb.gov
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552

*Attorneys for Plaintiff*
*Consumer Financial Protection Bureau*