UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION and the COMMONWEALTH OF MASSACHUSETTS *ex rel.* ANDREA CAMPBELL, ATTORNEY GENERAL,<br><br>Plaintiffs,<br><br>v.<br><br>COMMONWEALTH EQUITY GROUP, LLC (D/B/A KEY CREDIT REPAIR) and NIKITAS TSOUKALES (a/k/a NIKITAS TSOUKALIS),<br><br>Defendants. | Case No. 1:20-cv-10991-IT |

## [PROPOSED] STIPULATED FINAL JUDGMENT AND ORDER AS TO RELIEF

Plaintiffs Bureau of Consumer Financial Protection and the Commonwealth of Massachusetts and Defendants Commonwealth Equity Group, LLC d/b/a Key Credit Repair and Nikitas Tsoukalis (collectively the "Parties") have jointly moved the Court to amend, to the extent necessary, its Memorandum and Order [Doc. No. 146] and its Order Awarding Plaintiffs Monetary and Injunctive Relief, Assessing Civil Money Penalties, and Entering Final Judgment Against All Defendants on Counts I-IX [Doc No. 147], to prevent Defendants from being subject to multiple, conflicting judgments.

The Parties agree to entry of this Stipulated Final Judgment and Order as to Relief ("Order") to settle and resolve all matters in dispute as to monetary and injunctive relief and civil money penalties arising from the findings set forth in the Court's Memorandum and Order [Doc.

No. 146].

After considering the Parties' motion and the entire record in this matter, the Court GRANTS the motion and enters the following ORDER:

## FINDINGS

1. This Court has jurisdiction over the Parties and the subject matter of this action.

2. The Court's findings in the Memorandum and Order [Doc. No.146] are hereby incorporated by reference in this Order.

3. Defendants waive all rights to seek judicial review or otherwise challenge or contest the validity of this Order and any claim they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order. Each Party agrees to bear its own costs and expenses, including, without limitation, attorneys' fees.

4. Entry of this Order is in the public interest.

## DEFINITIONS

The following definitions apply to this Order:

5. "Affected Consumers" includes any consumer who made a payment for Key Credit Repair's services, including for the initiation of those services, from January 1, 2011, through the Effective Date.

6. "Assisting Others" includes, but is not limited to:

   a. consulting in any form whatsoever;

   b. providing paralegal or administrative support services;

   c. performing customer service functions, including but not limited to, receiving or responding to consumer complaints;

   d. formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including but not limited to, any telephone

       sales script, direct mail solicitation, or the text of any Internet website, email, or other electronic communication or advertisement;

  e. formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including but not limited to, web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

  f. providing names of, or assisting in the generation of, potential customers;

  g. performing marketing, billing, or payment services of any kind; and

  h. acting or serving as an owner, officer, director, manager, or principal of any entity.

7. "Consumer" means any individual or an agent, trustee, or representative acting on behalf of an individual. Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. § 5481(4).

8. "Consumer Report" has the meaning provided in the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*, and any amendments thereto. As of the date of this Order, "Consumer Report" is defined under the FCRA as any written, oral, or other communication of any information by a Consumer Reporting Agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living, which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for:

  a. credit or insurance to be used primarily for personal, family, or household purposes;

  b. employment purposes; or

        c. any other purpose authorized under the FCRA, § 604, 15 U.S.C. § 1681b.

9.     "Credit-Repair Service" means any good or service represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating, whether or not bundled or otherwise sold in combination with other goods or services.

10.     "Debt-Relief Service" means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors or debt collectors, including a reduction in the balance, interest rate, or fees owed by a person.

11.     "Defendants" means Key Credit Repair and Tsoukales, individually, collectively, or in any combination, and each of them by whatever names each might be known.

12.     "Effective Date" means the date on which this Order is entered by the Court.

13.     "Enforcement Director" means the Assistant Director of the Division of Enforcement for the Consumer Financial Protection Bureau, or their delegate.

14.     "Financial-Advisory Service" means services provided to consumers on individual financial matters or relating to proprietary financial products or services in connection with any Credit-Repair Service or any Debt-Relief Service, including (1) providing credit counseling to any consumer and (2) providing services to assist a consumer with debt management or debt settlement, modifying the terms of any extension of credit, or avoiding foreclosure, as set forth in 12 U.S.C. § 5481(15)(A)(viii).

15.     "Key Credit Repair" means Commonwealth Equity Group, LLC, d/b/a Key Credit Repair, and its successors and assigns.

16. "Related Consumer Action" means a private action by or on behalf of one or more Consumers or an enforcement action by another governmental agency brought against a Defendant based on substantially the same facts as described in this Order.

17. "Telemarketing" means a plan, program, or campaign that is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones, whether or not covered by the Telemarketing Sales Rule, 16 C.F.R. Part 310.

18. "Tsoukales" means Nikitas Tsoukales (a/k/a Nikitas Tsoukalis), and any other names by which he might be known, in his individual capacity.

## CONDUCT PROVISIONS

### I.

### Ban on Credit Repair Services, Debt-Relief Services, and Financial-Advisory Services

**IT IS ORDERED** that:

19. For 25 years from the Effective Date, Defendants, whether acting directly or indirectly, are permanently restrained, enjoined, and prohibited from engaging in or Assisting Others with marketing, advertising, promoting, offering for sale, selling, providing, or Telemarketing any:

   a. Credit-Repair Service;

   b. Debt-Relief Service; or

   c. Financial-Advisory Service.

Nothing in this Order shall be read as an exception to this paragraph.

20. For 25 years from the Effective Date, Defendants are restrained and enjoined from receiving any remuneration or other consideration from, holding any ownership interest in,

5

or working in any capacity for any person or entity that is engaged in marketing, advertising, promoting, offering for sale, selling, providing, or Telemarketing any:

    a. Credit-Repair Service;

    b. Debt-Relief Service; or

    c. Financial-Advisory Service.

Nothing in this Order shall be read as an exception to this paragraph.

## II.

## Prohibitions on Use of Customer Information

**IT IS FURTHER ORDERED** that:

21. Defendants and their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with either Defendant, who receive actual notice of this Order, whether acting directly or indirectly, may not:

    a. disclose, use, or benefit from customer information, including names, addresses, telephone numbers, email addresses, social security numbers, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that Defendants obtained before the Effective Date; or

    b. attempt to collect, sell, assign, or otherwise transfer any right to collect payment from any Consumer who entered into an agreement related to Credit-Repair Services before the Effective Date.

However, customer information may be disclosed upon request by a government agency or as required by law, regulation, or court order.

## MONETARY PROVISIONS

## III.

## Order to Pay Redress

**IT IS FURTHER ORDERED** that:

22. A judgment for consumer redress is entered in favor of Plaintiffs and against Defendants, jointly and severally, for Defendants' violations of 12 U.S.C. §§ 5531, 5536; 16 C.F.R. § 310.4(a)(2); 16 C.F.R. § 310.3(a)(2); and Chapter 93A as follows:

   a. $36,229,618 for all fees charged to Consumers from January 31, 2013, to the Effective Date; and

   b. an amount corresponding to the fees Defendant Key Credit charged Affected Consumers from January 1, 2011, to January 31, 2013.

However, full payment of this judgment will be suspended upon satisfaction of the obligations in this Section and Section VI and subject to Section IV of this Order.

23. Within 10 days of the Effective Date, Defendants must pay to the Bureau, by wire transfer to the Bureau or to the Bureau's agent, and according to the Bureau's wiring instructions, $20,000.00 in partial satisfaction of the judgment as ordered in Paragraph 22 of this Section.

24. Any funds received by Plaintiffs in satisfaction of this judgment will be deposited into a fund or funds administered by the Bureau or the Bureau's agent according to applicable statutes and regulations to be used for redress for Affected Consumers, including legal restitution or the refund of moneys, and for any attendant expenses for the administration of any such redress.

25. If the Bureau determines, in its sole discretion, that providing redress to consumers is wholly or partially impracticable or if funds remain after the administration of redress is completed, the Bureau will deposit any remaining funds in the U.S. Treasury. Defendants will have no right to challenge the Bureau's choice of remedies under this Section and will have no right to contest the manner of distribution chosen by the Bureau.

26. Payment of redress to any Affected Consumer under this Order may not be conditioned on that Affected Consumer waiving any right.

## IV.

## Effect of Misrepresentation or
## Omission Regarding Financial Condition

**IT IS FURTHER ORDERED** that:

27. The suspension of monetary judgment entered in Section III of this Order is expressly premised on the truthfulness, accuracy, and completeness of Defendants' sworn financial statements and supporting documents submitted to Plaintiffs on or about October 13, 2025, which Defendants assert are truthful, accurate, and complete and include: Financial Disclosure Form for Corporate Defendant (Key Credit); Financial Disclosure Form for Individual Defendant (Nikitas Tsoukales); 2023 and 2024 income tax returns with schedules for Key Credit; 2024 income tax return with schedules for Nikitas Tsoukales; Capital One accounts; Needham Bank accounts; Northwestern Mutual Life Insurance; Key Credit gross revenues (2011-2024); Key Credit Income Statement (P&L) for year ended December 31, 2024; Credit Report for Nikitas Tsoukales (October 8, 2025); and Credit Report for Dara Tsoukales (October 8, 2025).

28. If upon motion by any Plaintiff, the Court determines that Defendants have failed to disclose any material asset or that any of its financial statements or oral testimony contain any

8

material misrepresentation or omission, including materially misstating the value of any asset, the Court shall terminate the suspension of the monetary judgment entered in Section III and without further adjudication, shall reinstate the monetary judgment as ordered in Paragraph 22, and that full judgment shall be immediately due and payable, less any amounts paid to the Bureau under Section III of this Order.

29. If the Court terminates the suspension of the monetary judgment under this Section, the Plaintiffs will be entitled to interest on the judgment, computed from the date of entry of this Order, at the rate prescribed by 28 U.S.C. § 1961, as amended, on any outstanding amounts not paid.

30. Provided, however, that in all other respects this Order shall remain in full force and effect unless otherwise ordered by the Court; and, provided further, that proceedings instituted under this provision would be in addition to, and not in lieu of any other civil or criminal remedies as many be provided by law, including any other proceedings that any Plaintiff may initiate to enforce this Order.

## V.

## Order to Pay Civil Money Penalty

**IT IS FURTHER ORDERED** that:

31. Under § 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law set forth in the Memorandum and Order [Doc. No. 146] and considering the factors in 12 U.S.C. § 5565(c)(3), Defendants must pay a civil money penalty, jointly and severally, in the amount of $1.00. This nominal penalty is based on Defendants' limited ability to pay as attested to in its sworn financial statements listed in Section IV above.

32. Within 10 days of the Effective Date, Defendants must pay the civil penalty amount set forth in Paragraph 31 by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

33. The civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by the CFPA, 12 U.S.C. § 5497(d).

34. Defendants must treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Defendants may not:

   a. claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

   b. seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

35. The civil penalty imposed by the Order represents a penalty paid to the United States Government, is not compensation for actual pecuniary loss, and thus, as to Defendant Tsoukales, is not subject to discharge under the Bankruptcy Code under 11 U.S.C. § 523(a)(7).

## VI.
## Additional Monetary Provision

IT IS FURTHER ORDERED that:

36. In the event of default on a Defendant's obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

37. Defendants relinquish all dominion, control, and title to the funds paid under this Order to the fullest extent permitted by law and no part of the funds may be returned to the Defendants.

38. Under 31 U.S.C. § 7701, each Defendant, unless it already has done so, must furnish to Plaintiffs its taxpayer identification numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

39. Within 30 days of the entry of a final judgment, order, or settlement in a Related Consumer Action, the relevant Defendant must notify the Enforcement Director and the Commonwealth of the final judgment, order, or settlement in writing. That notification must indicate the amount of redress, if any, that Defendant paid or is required to pay to Consumers and describe the Consumers or classes of Consumers to whom that redress has been or will be paid. To preserve the deterrent effect of the civil money penalties in any Related Consumer Action, neither Defendant may argue that the relevant Defendant is entitled to, nor may any Defendant benefit by, any offset or reduction of any compensatory monetary remedies imposed in the Related Consumer Action because of the civil money penalties paid in this action or because of any payment that the Bureau makes from the Civil Penalty Fund ("Penalty Offset"). If the court in any Related Consumer Action grants such a Penalty Offset to any Defendant, the Defendant must, within 30 days after entry of a final order granting the Penalty Offset, notify the Bureau, and pay the amount of the Penalty Offset to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalties imposed in this action.

## COMPLIANCE PROVISIONS

## VII.

## Reporting Requirements

**IT IS FURTHER ORDERED** that:

40. Each Defendant must notify Plaintiffs of any development that may affect compliance obligations arising under this Order, including but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against any Defendant; or a change in a Defendant's name or address. The Defendant must provide this notice, if practicable, at least 30 days before the development, but in any case, no later than 14 days after the development. Within 30 days of the Effective Date, each Defendant must:

   a. designate at least one telephone number and email, physical, and postal address as points of contact, which Plaintiffs may use to communicate with Defendant;

   b. identify all businesses for which Defendant is the majority owner, that Defendant directly or indirectly controls, by all of their names, telephone numbers, and electronic, physical, and postal addresses;

   c. describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales;

   d. identify Defendant Tsoukales' telephone numbers and all email, Internet, physical, and postal addresses, including all residences; and

  e. describe in detail Defendant Tsoukales' involvement in any business for which he performs services in any capacity or which he wholly or partially owns, including the name of the business, Defendant's title, role, responsibilities, participation, authority, control, and ownership.

41. Defendants must report any change in the information required to be submitted under Paragraph 40 at least 30 days before the change, or as soon as practicable after learning about the change, whichever is sooner.

42. One year after the Effective Date, Defendant Tsoukales must submit to the Enforcement Director and the Commonwealth an accurate written compliance progress report ("Compliance Report"), the accuracy of which is sworn to under penalty of perjury, and which, at a minimum:

  a. describes the steps that Defendant Tsoukales has taken to reasonably assess whether Defendants are complying with the Order, and each applicable paragraph and subparagraph of the Order;

  b. describes in detail whether and how Defendants have complied with the Order, and each applicable paragraph and subparagraph of the Order, including the manner of verification of such compliance and any corrective actions taken to remedy potential non-compliance with the applicable requirement, paragraph, or subparagraph; and

  c. attaches a copy of each Order Acknowledgment obtained under Section VIII, unless previously submitted to the Bureau.

## VIII.

## Order Distribution and Acknowledgment

**IT IS FURTHER ORDERED** that:

43. Within 7 days of the Effective Date, Defendants must each submit to the Plaintiffs an acknowledgment of receipt of this Order, sworn under penalty of perjury.

44. Within 30 days of the Effective Date, each Defendant, for any business for which that Defendant is the majority owner or which that Defendant directly or indirectly controls, must deliver a copy of this Order to each of its executive officers, and attorneys, as well as to any managers, employees, service providers, or other agents and representatives who have responsibilities related to the subject matter of the Order.

45. For 10 years from the Effective Date, each Defendant, for any business for which that Defendant is the majority owner or which he directly or indirectly controls, must deliver a copy of this Order to any business entity resulting from any change in structure referred to in Section VII, any future executive officers, and attorneys before they assume their responsibilities, as well as to any managers, employees, service providers, or other agents and representatives who will have responsibilities related to the subject matter of the Order before they assume their responsibilities.

46. Each Defendant must secure a signed and dated statement acknowledging receipt of a copy of this Order, within 30 days of delivery, from all persons receiving a copy of this Order under this Section.

47. Ninety days after the Effective Date, each Defendant must submit to Plaintiffs a list of all persons and their titles to whom this Order was delivered through that date under this Section and a copy of all signed and dated statements acknowledging receipt of this Order under Paragraph 46.

## IX.
## Recordkeeping

**IT IS FURTHER ORDERED** that:

48. For at least 10 years from the Effective Date, Defendants must create, or if already created, must retain the following business records:

   a. all documents and records necessary to demonstrate full compliance with each provision of this Order, including all submissions to Plaintiffs;

   b. recordings of all telephone calls discussing Credit-Repair Services with prospective customers prior to enrollment;

   c. all telephone scripts related to Credit-Repair Services;

   d. telemarketing registrations and licenses and applications for such registrations and licenses;

   e. all contracts with a telemarketer for advertisings or marketing services;

   f. audited financial statements for all Defendants; and

   g. all Consumer complaints and refund requests (whether received directly or indirectly, such as through a third party), and any responses to those complaints or requests.

Defendants must make these materials available to Plaintiffs upon the Plaintiffs' request.

## X.
## Notices

**IT IS FURTHER ORDERED** that:

49. Unless otherwise directed in writing by Plaintiffs, Defendants must provide all submissions, requests, communications, or other documents relating to this Order in writing,

with the subject line, "CFPB et al. v. Commonwealth Equity Group, LLC. et al., Case No.1:20-cv-10991-IT," and send them by email to Enforcement_Compliance@cfpb.gov:

> Assistant Director for Enforcement
> Consumer Financial Protection Bureau
> ATTENTION: Division of Enforcement

and to the below address and contemporaneously by email to IFScorrespondence@mass.gov:

> Division Chief
> Insurance and Financial Services Division
> Massachusetts Attorney General's Office
> 1 Ashburton Place
> Boston, MA 02108

## XI.

### Additional Cooperation with Plaintiffs

**IT IS FURTHER ORDERED** that:

50. Defendants have produced information regarding the identity and location of, and the amount of injury sustained by, each Affected Consumer. Defendants certified the information they provided is a full accounting of the amount of injury sustained by each Affected Consumer used as the basis for redress in Section III.

51. Upon request, Defendants must cooperate fully to help Plaintiffs obtain any additional information regarding the identity and location of, and the amount of injury sustained by, each Affected Consumer. Defendants must provide such information in its or its agents' possession or control within 14 days of receiving a written request from either Plaintiff.

## XII.

## Compliance Monitoring

**IT IS FURTHER ORDERED** that, to monitor Defendants' compliance with this Order:

52. Within 14 days of receipt of a written request from either Plaintiff, Defendants must submit additional compliance reports or other requested information, including sworn testimony or documents, which must be made under penalty of perjury, regarding: (a) this matter; (b) anything related to or associated with the conduct described in the Memorandum and Order [Doc. No. 146]; or (c) compliance with this Order.

53. For purposes of this Section, Plaintiffs may communicate directly with either Defendant, unless that Defendant retains counsel related to the communications.

54. Defendants must permit Plaintiffs' representatives to interview any employee or other person affiliated with Defendants who has agreed to such an interview regarding compliance with this Order. The person interviewed may have counsel present.

55. Nothing in this Order will limit the Bureau's lawful use of compulsory process, under 12 C.F.R. § 1080.

## XIII.

## Transfer or Assignment of Operations

**IT IS FURTHER ORDERED** that:

56. Should Defendants seek to transfer or assign all or part of their operations that are subject to this Order, Defendants must, as a condition of sale, obtain the written agreement of the transferee or assignee to comply with all applicable provisions of this Order.

## XIV.

### Retention of Jurisdiction

**IT IS FURTHER ORDERED that:**

57. The Court will retain jurisdiction of this matter for the purpose of enforcing this Order.

**IT IS SO ORDERED.**

DATED this 18th day of December, 2025.

_____
Indira Talwani
United States District Judge